a finding that Spangler cannot work, Met Life's decision to terminate Spangler's LTD benefits was arbitrary and capricious.

### III. Conclusion

For all the reasons stated above, the district court's decision is REVERSED and the case REMANDED for entry of judgment in favor of Spangler.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0424P (6th Cir.)
File Name: 02a0424p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JANICE SPANGLER,
        *Plaintiff-Appellant,*

        *v.*

No. 01-5770

LOCKHEED MARTIN ENERGY
SYSTEMS, INC.;
METROPOLITAN LIFE
INSURANCE CO.,
        *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 00-00552—James H. Jarvis, District Judge.

Argued: October 16, 2002

Decided and Filed: December 16, 2002

Before: MARTIN, Chief Circuit Judge; RYAN, Circuit Judge; COHN, District Judge.[*]

_____

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**COUNSEL**

———————————

**ARGUED:** Donald K. Vowell, VOWELL & ASSOCIATES, Knoxville, Tennessee, for Appellant. John C. Burgin, Jr., KRAMER, RAYSON, LEAKE, RODGERS & MORGAN, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Donald K. Vowell, Elizabeth Kelly Johnson, VOWELL & ASSOCIATES, Knoxville, Tennessee, for Appellant. John C. Burgin, Jr., KRAMER, RAYSON, LEAKE, RODGERS & MORGAN, Knoxville, Tennessee, Christopher H. Hayes, Oak Ridge, Tennessee, for Appellees.

———————————

**OPINION**

———————————

AVERN COHN, District Judge. This is a case under the Employment Retirement Disability Act, 29 U.S.C. § 1001, *et seq.* (ERISA). Plaintiff-appellant Janice Spangler (Spangler) claims that defendants-appellees Lockheed Martin Energy Systems, Inc. (Lockheed Martin) and Metropolitan Life Insurance Co. (Met Life),[1] wrongfully terminated her long-term disability (LTD) benefits. After conducting a review of the administrative record under *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998), the district court granted Met Life's motion for judgment on the administrative record. Spangler appeals. Based on our review of the administrative record, we find that Met Life acted arbitrarily and capriciously in denying Spangler's LTD claim. Accordingly, we reverse the district court's decision.

———————————

[1] Although both Met Life and Lockheed Martin are named defendants, the decision to deny Spangler benefits was made by Met Life. For purposes of this decision, we treat the case as if it is against only Met Life.

record.[6] Why Met Life did not also send Dr. Rice's report or the rest of Spangler's file Crawford for review by the vocational consultant is inexplicable. Indeed, we can only conclude that Met Life, as Spangler contends, "cherry-picked" her file in hopes of obtaining a favorable report from the vocational consultant as to Spangler's ability to work.

Met Life's action in sending only Dr. MacKay's September 14, 1999, report to Crawford was arbitrary and capricious. Met Life should have provided Crawford with all of the medical records relevant to Spangler's capacity to work. As a result, the report by Crawford's vocational consultant was an incomplete and inaccurate representation of Spangler's ability to work.

Regardless of the shortcomings of the vocational consultant's report and Met Life's arbitrary actions with respect to the report, the ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious. For this, we must examine Met Life's decision in light of the administrative record. Here, as set forth in detail above, virtually all of the evidence in the administrative record shows that Spangler is disabled from working. Met Life, however, chose to base its decision on only the report by Crawford's vocational consultant. Because the report was inherently flawed and because the medical evidence supports

———————————

[6] The district court found credible Met Life's argument that it did not send Dr. Rice's Physical Capacities Evaluation to Crawford because it was not accompanied by office notes or other information that would be sufficient to evaluate Spangler's ability to work. We disagree. There is no evidence that Met Life also sent office notes or other information from Dr. MacKay to the vocational consultant at Crawford. Indeed, we note that Dr. Rice's form contained the statement that Spangler could not work, which would seem to be relevant information to send to Crawford for its review by a vocational consultant. We do not see any good reason for why Met Life sent only Dr. MacKay's Physical Capacities Evaluation and not Dr. Rice's.

*v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). *See also Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996). Stated differently, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citation omitted). *See also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (en banc).

**B.**

In requesting a transferable skills analysis by Crawford, Met Life sent *only* Dr. MacKay's September 14, 1999, Physical Capacities Evaluation. Based on Dr. MacKay's report, the vocational consultant at Crawford opined that Spangler could perform her own job as well as several other sedentary positions. It is undisputed that the vocational consultant never examined Spangler nor had any other materials other than Dr. MacKay's September 1999, Physical Capacities Evaluation on which to base this opinion.[5] Contrary to Met Life's assertion, Dr. MacKay's September 14, 1999, report of Spangler's capabilities is somewhat aberrant; as noted in detail above, all of his prior reports and statements clearly indicate that Spangler is not able to perform any work. Moreover, Dr. Rice's Physician Capacities Evaluation, also completed in September, reveals a much different picture of Spangler's abilities and is consistent with all of the evidence in the administrative

---

[5] At oral argument, Met Life represented that it had sent more than Dr. MacKay's September 14, 1999, report to the vocational consultant at Crawford. We find no support in the record for this representation. Spangler has consistently maintained that Met Life sent only this one report. Moreover, the district court accepted this as fact, stating that "Met Life forwarded only Dr. MacKay's report [to the vocational consultant]."

## I. Background

Spangler worked as a lead auditor/data assistant at Lockheed Martin's U.S. government facility in Oak Ridge, Tennessee. As an employee, Spangler was eligible for and a participant in Lockheed Martin's Employee Benefit Plan, governed by ERISA. Lockheed Martin is the plan sponsor, and Met Life is the plan administrator.

In October of 1997, Spangler began missing work because of spondylolisthesis.[2] When she was not able to return, Spangler applied for and received short-term disability benefits for six months.

During these six months, Spangler sought treatment with Dr. Michael MacKay, an orthopedic surgeon who diagnosed her with spondylolisthesis. An office note from a January 6, 1998, visit states that Spangler

has not improved with physical therapy. She remains unable to return to work. She continues with significant back pain. . . . she wishes to proceed with conservative treatment and elected for a brace. We have discussed cage fusion of the lumbar spine which she will consider doing in February, if she does not respond to the brace.

---

[2] Spondylolisthesis occurs when deformities or defects in part of a vertebra cause one vertebra to slip forward over another one. This causes misalignment of the bones of the spine (vertebrae). In some instances, this may lead to spinal cord or nerve root compression, back pain, and numbness or weakness in the legs, a back condition in which a vertebra slips forward on the vertebra below it. It can cause lower back pain and pain in the thighs, buttocks, stiffness, muscle tightness, and tenderness in the slipped area. Neurologic damage may also result from pressure on nerve roots. http://my.webmd.com/encyclopedia/article/1661.52563#sts15098.

A February 1998 office note states that Spangler "has just begun wearing her brace for the last few days and feels better with it on but has extreme pain when she removes it. She is neurologically intact."

Spangler applied for LTD benefits in February of 1998. In March and April of 1998, Met Life wrote to Dr. MacKay and others that Spangler identified as her treating physicians and requested her medical records. On June 16, 1998, Met Life awarded Spangler LTD benefits, finding Spangler eligible as of April 13, 1998. In the award letter, Met Life explained that in order to maintain her disabled status, she would have to remain under a doctor's care and keep Met Life informed of her condition.[3] To this end, a March 1998 office note in Spangler's file reports that Spangler's brace helped her mobility but that if Spangler did not improve, "surgical treatment and fusion techniques" would be "the next course of treatment."

On July 15, 1998, Met Life wrote Spangler and encouraged her to apply for social security benefits. In the letter, Met Life instructed Spangler to contact an area law firm, to whom Met Life had already given Spangler's name, to assist her in the application process. Spangler contacted the law firm and applied for social security benefits. In October of 1998, Spangler was awarded social security benefits retroactive to

---

[3]The plan provides:

Under the Long Term Disability Plan, you are considered totally disabled during your first 24 months of long term disability if you are unable to perform the duties of your regular job with the Company due to illness or injury and are under the regular care of a licensed practicing physician. . . . After you have received long term disability benefits for 24 months, you are considered totally disabled if you remain under the regular care of a licensed practicing physician and you are unable to work at any job for which you might be qualified based on your education, training and experience. In order to continue receiving benefits, you must furnish periodic medical evidence of your illness or injury if requested by the Company.

On September 14, 1999, we received a physical capacity statement from your attending physician, Dr. Michael MacKay indicated you had the ability to do the following:
- sit for six hours
- stand two hours
- walk two hours
- lift and carry up to 10 pounds occasionally
- use your hands and feet for repetitive actions
- bend, squat, crawl, climb and reach above shoulder level occasionally

Based on this information your claim was referred to a vocational consultant to complete a transferable skills analysis (TSA). The TSA identified several sedentary occupations, including your own occupation, consistent with your vocational history and physical abilities as outlined by Dr. MacKay.

In October 2000, Spangler sued Met Life for wrongful denial of LTD benefits.

## II. Analysis

### A.

This court reviews a decision of a district court in an ERISA benefits case *de novo*. *Gatlin v. National Healthcare Corp.*, 248 F.3d 1148 (6th Cir. 2001) (*citing Paul Revere Life Ins. Co. v. Brock*, 28 F.3d 551, 553 (6th Cir. 1994)). The parties agree that the standard of review in this case is whether the denial of benefits was arbitrary and capricious because Met Life had discretionary authority to construe and interpret the benefit plan at issue. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991); *Elliott v. Lockheed Martin Energy Systems, Inc.*, 61 F.Supp.2d 745, 748 (E.D. Tenn. 1999) A decision regarding eligibility for benefits is not arbitrary and capricious if the decision is "rational in light of the plan's provisions." *Daniel*

April 1998. The law firm representing Spangler informed Met Life of the outcome of Spangler's social security case in October of 1998.

Meanwhile, on September 21, 1998, Dr. MacKay performed a "posterolateral fusion," inserted a brace and a battery-powered "spinal fusion stimulator." On November 6, 1998, Dr. MacKay reported that Spangler could be expected to return to work January 15, 1999. That did not happen, however, and Spangler continued to provide Met Life with documents of her progress.

On February 23, 1999, Dr. Bruce Hunt, one of Spangler's treating physicians, filled out an Attending Physician Statement, a two-page form from Met Life. Dr. Hunt said that Spangler could sit for two hours, stand for one hour, walk for zero hours, could not do lifting of any kind, and could not work.

On March 12, 1999, Dr. MacKay filled out an Attending Physician Statement. He said that Spangler could sit for four hours, stand for one hour, walk for one hour, lift up to 10 pounds occasionally, but she could not work and was not expected to improve. A March 9, 1999, office visit note from Dr. MacKay also reports that Spangler "is not improved and is not doing well. She is still dependent on a cane. Her pain is purely lumbar at this point with minimal leg pains. There is still some tingling and she is still having problems with falling."

On April 16, 1999, Dr. MacKay wrote to Met Life stating that Spangler's pain continued and "she is quite disabled by it. . . . I do not think that there is any way that she can reasonably go back to work and she will be considered for permanent disability." On April 22, 1999, Dr. MacKay again wrote to Met Life stating:

> Ms. Janice Spangler is unable to return to work at the anticipated date of January 15, 1999 due to continued severe lower back pain. She is dependent on a walker

---

that a person in Spangler's geographical location with her training and limitations (set forth in Dr. MacKay's September 14, 1999, report) could be employed in Spangler's prior job as well as several other comparable sedentary jobs.

On December 3, 1999, Met Life terminated Spangler's LTD benefits effective January 1, 2000. The denial letter states in relevant part:

> Based upon a thorough and extensive review and evaluation of all the medical information contained in your claim file, we have determined that you no longer qualify for Long Term Disability ("LTD") benefits under the Lockheed Martin Energy Systems plan. Our reasons are set forth below:
> . . . . A Transferable Skills Analysis was performed using the limitations on your activities supplied by Dr. MacKay. The Analysis indicated that you have transferable skills and residual functional capabilities for your own job as well as with various other occupations.

Spangler appealed Met Life's decision, submitting additional information in support of her claim. Specifically, on January 6, 2000, Dr. MacKay submitted another Attending Physician Statement, stating that Spangler could sit for one hour, could not stand or walk, and could not return to work. Dr. Rice submitted an Attending Physician Statement on January 10, 2000, stating that Spangler could not work.

On January 20, 2000, Met Life wrote to Spangler denying her appeal, stating in relevant part:

> You attended a functional capacity evaluation on July 21, 1999 that indicated you met the sedentary work capacity level, however, your performance did not meet the job demands for your previous occupation. You scored positive on most psychometric indicators for symptom magnification and a focus on pain.

and cane for ambulation. She has not improved with a spinal fusion. Her spondylolisthesis has not progressed as far as I can tell on her x-rays. Long term management as the pain continues may include a repeat imaging such as a myelogram CT, as well as possible repeat surgery.

A May 28, 1999, entry in Met Life's Diary Review Report states that "both AP [Attending Physician Dr. Rice] and Dr. MacKay indicate that [Spangler] has significant restrictions and will never [return to work]." The diary review notes that Spangler was awarded social security disability benefits. The diary review also indicates that Met Life will send Spangler for a Functional Capacity Examination to "identify what limits would prevent [Spangler] from performing her own [occupation]."

On July 21, 1999, Met Life scheduled Spangler for a whole body functional capacity examination. The Functional Capacity Evaluation Summary Report, signed by Susan Ewing, a registered physical therapist for Met Life, and Brian Moore, an Industrial Medicine Coordinator, concluded:

> This patient demonstrates a functional capacity at the Sedentary physical demand level, which does not meet the stated job demands for her previously held position. She scored positively on most psychometric indicators for symptom magnification and a focus on pain. Both the examiner and physical therapist were limited in performing a complete evaluation or testing secondary to complaints of pain and inability to assume requested positions for testing.

The testing showed that Spangler could sit for "14 minutes," stand for "10 seconds," walk "4 x 30 seconds with quad cane," and climb "five steps with assist." The report ultimately found Spangler disabled and stated "Data is available on file which substantiates the findings in this report."

In September 1999, Met Life asked Dr. MacKay and Spangler's primary care physician, Dr. Mark Rice, to provide updated office notes and tests and to complete a Physical Capacities Evaluation, another form provided by Met Life. On September 14, 1999, Dr. MacKay filled out the Physical Capacities Evaluation form, which is less detailed than the Attending Physician Statements that Dr. MacKay had previously submitted to Met Life. On the form, Dr. MacKay reported that Spangler could sit for six hours, walk for two hours, and lift and carry up to ten pounds occasionally. The report to Met Life also included Dr. MacKay's office notes. The Physical Capacities Evaluation, unlike the Attending Physician Statement, does not ask whether the patient was capable of working but rather asks only for how long the patient could sit, stand, walk, lift, carry, etc. As noted above, all previous and subsequent reports Dr. MacKay provided to Met Life indicated that Spangler was totally disabled and was not capable of working.

Dr. Rice's Physical Capacities Evaluation is dated September 7, 1999. Dr. Rice said that Spangler could sit for four hours during an eight-hour workday but that she could not stand, walk, or drive. Notably, Dr. Rice also wrote: "I consider this [patient's] low back pain intractractable. She also has osteoarthritis of hands. I don't foresee return to work."

Met Life then decided to obtain a transferable skills analysis to determine whether Spangler was capable of sedentary work. In doing so, Met Life forwarded *only Dr. MacKay's September 14, 1999, Physical Capacities Evaluation* to Crawford & Company Healthcare Management Services (Crawford), a consulting company, and asked it to determine if Spangler was capable of working. One of Crawford's vocational consultants, Greta Knaus,[4] determined

---

[4]The district court incorrectly identified Kimberly Switzer as the vocational consultant. Ms. Switzer is the "Case Management Specialist" from Met Life assigned to Spangler's file.