Julie **MITCHELL,** Plaintiff,

v.

**AETNA LIFE INSURANCE CO.; Viacom Incorporated Long Term Disability Plan; Viacom Incorporated Life Insurance Plan; Viacom Incorporated Pension/Retirement Plan, Defendants.**

**No. CV 03–9605 ER (RNBx).**

United States District Court,
C.D. California.

Feb. 2, 2005.

Corinne Chandler, Glenn R. Kantor, Kantor & Kantor, Sherman Oaks, CA, for Plaintiff.

Ronald K. Alberts, Berger Kahn, Marina Del Rey, CA, Colleen A. Carolan, Morgan Lewis & Bockius, Los Angeles, CA, Kay Kyungsun Yu, Morgan, Lewis & Bockius, Philadelphia, PA, for Defendants.

## MEMORANDUM OPINION

RAFEEDIE, Senior District Judge.

Plaintiff Julie Mitchell brought this suit against Aetna Life Insurance and her employer's long term disability (LTD) plan for a denial of long term disability benefits under ERISA. The plaintiff was represented by Glenn R. Kantor and Corinne Chandler, of Kantor & Kantor, LLP. Defendants Aetna Life Insurance Co. and Viacom Incorporated Long Term Disability Plan were represented by Ronald K. Alberts and Tanja L. Darrow, of Berger Kahn. Plaintiff Mitchell claims that Aetna improperly terminated her long term disability benefits, and she seeks the payment of disability benefits with pre- and post-judgment interest as well as a declaration that she is disabled under the terms of the LTD plan. She also seeks attorneys fees and costs incurred in pursuing this action.

The parties agreed for the Court to decide the case on the administrative record following oral argument. After reviewing the administrative record and the parties' papers and considering the oral argument by the parties on December 14, 2004, the Court now renders its decision.

### I. Findings of Fact

Plaintiff Julie Mitchell was employed as a Display Advertising Specialist by Paramount Studios, a subsidiary of Viacom, Inc., since 1995. Defendant Aetna issued an insurance policy to Viacom, Inc. to fund the benefits to be paid pursuant to a Long

Term Disability (LTD) Plan. The Policy defines total disability as:

During the Waiting Period and in the first 24 months of a period of disability:

You are not able, solely because of injury or disease, to perform the material duties of your own occupation; except that if you start work at a reasonable occupation you will no longer be deemed totally disabled.

After the first 24 months of a period of disability:

You are not able, solely because of injury or disease, to work at any reasonable occupation.

In January, 2001, the plaintiff was discovered to have a herniated disc in her cervical spine. Plaintiff's last day of work was in February, 2001, and she underwent surgery for her herniated disc in May, 2001. Aetna approved the plaintiff's claim for long term disability benefits under the "your occupation" definition, effective August 11, 2001.

During her period of disability, the plaintiff also underwent a total hysterectomy for pelvic pain and bleeding. Plaintiff continued to report pain subsequent to her hysterectomy and her physicians continued to certify her total disability.

In May and June 2003, the plaintiff was notified by Aetna that her claim would be re-evaluated at the end of the "your occupation" period. As of June 26, 2003, Aetna had received the medical records from the plaintiff's attending physicians, Drs. Hamral, Shimizu and Murray.

On August 11, 2003, Mike Carty of Aetna, wrote the plaintiff a letter terminating her disability benefits under the Plan. In the termination letter, Mr. Carty stated that if the plaintiff chose to appeal the benefit decision, she should submit "any information that supports that you were unable to perform your own occupation as an Advertising Coordinator, or any other occupation for which you are qualified." The letter said she would be notified of the appeal determination within 60 days following her appeal unless "special circumstances" existed which would require an extension. Mr. Carty also advised that if such "special circumstances" existed, Ms. Mitchell would be notified of the same within the first 60 days following her appeal.

█ Plaintiff appealed the termination of her benefits on or about August 29, 2003 by a handwritten letter. By letter dated September 2, 2003, Aetna acknowledged the plaintiff's appeal and again requested "any medical information or documentation you believe might assist us in reviewing your claim."[1] On or about September 3, 2003, Aetna received a letter from Dr. Shimizu stating that the plaintiff was being treated for abdominal pain and concluding, without further explanation, that she "continues to remain disabled from working at any type of job at the present time."

During the appeals period there were at least 15 telephone conversations between Ms. Mitchell and Aetna. At least two of these calls was initiated by Aetna and regarded the status of Ms. Mitchell's appeal.

There was no decision rendered by Aetna on the plaintiff's appeal within the sixty day period, nor did Aetna request an extension of the appeal deadline during this time period due to "special circumstances." However, on November 25, 2003, a letter

---

**1.** This letter also suggested that the deadline for responding to the plaintiff's appeal was 45 days, rather than 60 days. This appears to be a misunderstanding of the applicable regulatory deadlines. Because the plaintiff's claim had initially been filed before January 1, 2002, the DOL regulations in effect before that date, which provide for an appeal determination within 60 days, are applicable to the plaintiff's appeal. *See* 29 C.F.R. § 2560.503–1.

was sent to the plaintiff advising that among other things, "voluminous medical records" had been received from Dr. Shimizu and Dr. Murray on November 7, 2003. This letter also advised Ms. Mitchell that her file had been referred "at this time" for an "independent medical review." Aetna advised the plaintiff that the appeal deadline was extended to December 11, 2003. Finally, Aetna again advised the plaintiff that "[a]ny new, relevant information should be submitted as soon as possible."

Plaintiff's file was referred to Dr. Raford, a board certified doctor of vocational medicine. When requesting the medical review of the file, the appeals unit posed the following questions to Dr. Raford:

1. Does objectively validated medical information support the claimant is totally impaired and unable to perform any reasonable occupational duties as of 7/31/03?

2. Does objectively validated medical information support any restrictions or limitations preventing full time work?

On December 8, 2003, Dr. Raford reviewed the claim and determined that plaintiff was not totally disabled. Plaintiff's appeal was denied on December 15, 2003.

## II. Conclusions of Law

### A. Standard of Review

 The disability insurance plan at issue in this case is a defined benefit plan subject to the provisions of the Employment Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1001 *et seq.* A denial of ERISA benefits is reviewed de novo unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility benefits or construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under *Firestone,* the default presumption is that the administrator has

no discretion and must show that the plan confers discretionary authority. *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (9th Cir.1999) (en banc). If the benefit plan confers discretion on the administrator, a reviewing court must apply an abuse of discretion standard. *See Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 942 (9th Cir.1999); *McClure v. Life Ins. Co. of North America,* 84 F.3d 1129, 1132 (9th Cir.1996). The Viacom LTD Plan at issue in this cases contains the following grant of discretion:

For the purpose of section 503 of Title I of the Employee Retirement Income Security Act of 1974, as amended (ERISA), Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy ... In exercising such fiduciary responsibility, Aetna shall have discretionary authority to:

determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy.

Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously.

This explicit grant of discretion would, therefore, make the Court's review of the decision to deny benefits subject to an abuse of discretions standard, and the Court would reverse the decision only if the administrator acted arbitrarily and capriciously.

The plaintiff argues, however, that Aetna is not entitled to an abuse of discretion review. Plaintiff Mitchell makes three arguments for why the standard of review should be de novo: First, she argues that Aetna forfeited its right to an abuse of discretion review by failing to timely handle the plaintiff's appeal. Second, she claims there is an actual conflict of interest between Aetna and Plaintiff Mitchell, its

fiduciary, that would deprive Aetna of deferential review by the Court. Third, the plaintiff argues that California public policy prevents the court from enforcing the provision of the policy that grants Aetna discretion. After carefully reviewing these arguments, the Court concludes that each of these arguments fails and that the review of the denial of benefits decision is subject to the abuse of discretion standard.

### 1. Failure to Timely Handle Plaintiff's Appeal

■ The plaintiff directs the Court to *Jebian v. Hewlett–Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098 (9th Cir.2003), a recent Ninth Circuit decision that held that the standard of review for the termination of benefits was de novo—even when the plan granted the administrator discretion—when the plan itself and Department of Labor regulations required the administrator to respond to a beneficiary's appeal within a certain time-frame or the decision was "deemed denied." *Id.* at 1105–07. The court concluded that the failure to rule on the appeal, seek an extension, or engage in a meaningful dialogue within the appeal period forfeits the right to an abuse of discretion review. *Id.* The court opined that because the administrator cannot reasonably exercise discretion when the appeal has already been "deemed denied," the administrator would not be entitled to an abuse of discretion review. A close review of the *Jebian* decision reveals that Plaintiff Mitchell's reliance on this case is misplaced for several reasons.

■ First, and most importantly, the actually holding of the case limits stripping the abuse of discretion review from plan administrators to cases when *the plan itself* provides that a decision is "deemed denied" if not decided within the deadline. The court commented on the scope of its holding as follows: "For present purposes,

however, we leave the more general issue and decide only that where *the plan itself* provides that a particular procedural violation results in an automatic decision rather than one calling for the exercise of the administrator's discretion, that provision is as enforceable as the provision giving the administrator discretionary authority under other circumstances." *Id.* at 1105–06 (emphasis added). Indeed, the majority in *Jebian*, responding to criticism by the dissent, stressed the fact that "the limitation on the exercise of discretion upon which we rely *is expressly contained in the plan itself.*" *Id.* at 1106 n. 6 (emphasis in original). Essentially, the court in *Jebian* holds that what the plan gives, the plan can take away. Although a plan may grant an administrator discretion, that discretion is limited by the terms of the plan. Unlike in *Jebian*, the plan at issue in the present case has no specific provision that makes decisions not made or extended during the appeal period "deemed denied." The plaintiff argues that the Department of Labor regulations applicable to the plaintiff's claim and the internal policy of Aetna required the administrator to respond to the appeal within 60 days. However, while the *Jebian* court mentions the applicable Department of Labor regulations that also contained the "deemed denied" language, the court's holding is that procedural failures subject the administrator's decision to a heightened de novo review only when *the plan itself* states that those failures make the appeal "deemed denied." The plan in this case contains no such language.

Second, it appears from the record that Aetna was in "substantial compliance" with its internal deadlines and those of the Department of Labor. *Id.* at 1107. While it is true that Aetna neither decided the appeal nor extended the appeal period within the 60–day period, Aetna was in contact with the plaintiff several times during the

appeals period. There was not the "radio silence" spoken of in *Jebian.* *Id.* at 1107. Even under the plaintiff's reckoning, Aetna contacted the plaintiff on two occasions during the appeal period to discuss her appeal. Furthermore, Aetna extended the appeals period shortly after it expired, giving reasons for doing so, and then decided the appeal within a few days of the new deadline. The record reveals that Aetna did not handle the plaintiff's appeal perfectly; however, even were the rule announced in *Jebian* to apply, Aetna's failures are not significant enough to change the standard of review.

### 2. Conflict of Interest

■■■■ The abuse of discretion standard can be heightened only if a "serious" conflict of interest exists. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan,* 370 F.3d 869 (9th Cir.2004).

> If, however, the program participant presents "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary," a rebuttable presumption arises in favor of the participant. The plan then "bears the burden of rebutting the presumption by producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits." If the plan fails to carry this burden of rebutting the presumption, we review de novo its decision to deny benefits.

*Tremain v. Bell Industries, Inc.,* 196 F.3d 970, 976 (9th Cir.1999) (quoting *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Technology, Inc.,* 125 F.3d 794, 798 (9th Cir.1997)).

In this case, Plaintiff Mitchell argues that a conflict of interest exists to make the standard of review de novo for the following reasons: (1) because Aetna allegedly used criteria not in the plan to deny the plaintiff's benefits; and (2) because Aetna allegedly made misrepresentations to Mitchell that demonstrate that it breached its fiduciary duty towards her. Neither of these arguments puts forward "material, probative evidence" that Aetna breached a fiduciary duty.

First, contrary to the plaintiff's contention, the record makes clear that the denial of benefits was not based solely on a lack of "objective evidence." Although the questions submitted to the medical reviewer asked if the plaintiff's disability claim was supported by "objectively validated medical information," the denial letter makes clear that the administrator also weighed the plaintiff's subjective reports of pain in reaching the decision to deny. Aetna denied the plaintiff's claim not because it did not believe that the plaintiff experienced some pain, but because it asserted that she had not established that her pain disabled her from working. *See Jordan,* 370 F.3d at 877. This is not a case of the administrator creating a new standard for denying the beneficiary's claim not contained in the plan itself. *See Canseco v. Constr. Laborers Pension Trust for S. Cal.,* 93 F.3d 600, 608–09 (9th Cir.1996). The denial letter makes clear that Aetna weighed all of the evidence before it—both subjective and objective— in reaching its decision that Mitchell was not totally disabled under the plan's definition.

Second, the alleged misrepresentations by Aetna that are asserted by the plaintiff do not represent "material, probative evidence" of a breach of Aetna's fiduciary duties. These allegations, even if true, do not show that Aetna was "bent on denying [Plaintiff's] claim" and "oblivious to [its] fiduciary obligations as an administrator of the LTD Plan." *Friedrich v. Intel,* 181 F.3d 1105 (9th Cir.1999). The plaintiff

argues that because the claims notes do not specifically indicate that all of the plaintiff's medical records had been reviewed, that Aetna was lying when it said it had reviewed the plaintiff's records in the initial denial letter. Similarly, the plaintiff argues that because there is no specific notation in the claims notes of Aetna receiving medical records on November 7, 2003, Aetna's November 25, 2003 letter to the plaintiff claiming to have received "voluminous records" on that date is false, and Aetna is thereby breaching its fiduciary duties. These are examples of the plaintiff literally making much ado about nothing. While the plaintiff asks the Court to construe silence in the claims notes as "material, probative evidence" of a breach of fiduciary duty, the Court does not conclude that such silence in the claims notes amounts to positive evidence of a breach of Aetna's fiduciary duties.

The November 25, 2003 letter from Aetna also stated that the plaintiff's file "has been referred at this time for an independent medical review." The plaintiff asserts that this is also a false representation because Dr. Raford, the medical reviewer, had not yet received the file and because Dr. Raford was not "independent." Merely because the file had not yet been received by Dr. Raford does not mean that Aetna was lying when it said it had "referred" the plaintiff's file to him. Furthermore, the record before the Court does not support the plaintiff's contention that Dr. Raford is not "independent." While he apparently performs a significant number of reviews for Aetna, he is not an Aetna employee, and the plaintiff has presented nothing more than the number of reviews handled by Dr. Raford to challenge his independence. In short, these representations made by Aetna do not amount to "material, probative evidence" of a breach of its fiduciary duties.

### 3. Grant of Discretion Against California Public Policy

■ Finally, the plaintiff argues that the discretion granted Aetna in the plan is against California public policy, and therefore the discretionary clause of the plan should fall out and the denial of the plaintiff's claim should be subject to de novo review. The plaintiff specifically points to a California Department of Insurance (DOI) letter opinion that calls into question grants of administrative discretion in insurance policies and ERISA plan documents, suggesting that such grants of discretion render insurance contracts "illusory" and "unsound insurance" within the meaning of California Insurance Code § 10291.5. The relevance of this opinion letter to existing grants of discretion in ERISA plan documents has been litigated before. The most thorough and persuasive discussion the Court has found on this issue is in the recent case of *Firestone v. Acuson Corp. Long Term Disability Plan,* 326 F.Supp.2d 1040 (N.D.Cal.2004). Addressing the plaintiff's argument in that case, that the opinion letter required a de novo review (which is the same argument Plaintiff Mitchell makes), the court concluded as follows:

> Even if plaintiff (and the DOI's) interpretation of section 10291.5(b)(1) were correct, and assuming that section 10291.5(b)(1) is not preempted by ERISA, this court nevertheless remains incapable of granting plaintiff the relief he seeks . . .

> [S]ection 10291.5 does not confer upon beneficiaries such as [Plaintiff] the right to "reform the nature of his policy and obtain benefits for which he never bargained by engaging courts to second-guess the Commissioner's approval of the policy." *Peterson v. American Life and Health Ins. Co.,* 48 F.3d 404, 410 (9th Cir.), *cert. denied,* 516 U.S. 942, 116

S.Ct. 377, 133 L.Ed.2d 301 (1995). Once the Commissioner has approved a plan, "an otherwise valid policy is a binding contract and governs the obligations of the parties until the Commissioner revokes his approval." *Id.* Plaintiff's only potential remedy is a writ of mandamus compelling the Commissioner to withdraw her approval; section 10291.5 does not enable plaintiff "to maintain a private action against [Defendant] to rewrite the terms of his policy." *Id.* at 411. Section 10291.5 simply does not empower this court to declare a certain portion of plaintiff's policy invalid or to unilaterally reform the terms and conditions of that policy. *Id.* at 410–11.

Moreover, even if plaintiff were to succeed in persuading this court to issue a writ of mandamus forcing the Commissioner to revoke acceptance of the [Defendant's] policy, such a revocation operates only "prospectively and not retrospectively." Cal. Ins.Code § 10291.5(f) ... It is necessary only to note that the DOI's opinion letter does not serve as a basis for ... subjecting defendant's termination decision to *de novo* review.

*Id.* at 1050–51. While not binding on the Court, this case's thorough analysis of the very issue presented by Plaintiff Mitchell is extremely persuasive. It seems clearly correct that the Court cannot simply rewrite the terms of the plan based upon this opinion letter, and even if Aetna's policy were revoked, the revocation would only apply prospectively and not retroactively. For these reasons, the Court agrees that the DOI's opinion letter does not serve as a basis for subjecting Aetna's termination decision to de novo review.

The Court, therefore, concludes that the appropriate standard of review in this case is abuse of discretion.

### B. Merits of Plaintiff Mitchell's Claim

When the Court reviews for "abuse of discretion, it is because the plan has put the locus for decision in the plan administrator, not in the courts" so the Court "cannot substitute [its] judgment for the administrator's." *Jordan,* 370 F.3d at 875. The Court sets aside the administrator's discretionary determination only when it is arbitrary and capricious. *Id.* While "[d]eferential review, of course, does not mean no review," "as long as the record demonstrates that there is a reasonable basis for concluding that the medical condition was not disabling, the decision cannot be characterized as arbitrary, and [the Court] must defer to the decision of the plan administrator." *Id.* at 879. These principles guide the Court's review of the termination of the plaintiff's long-term disability benefits.

A review of the record demonstrates that Aetna's decision to terminate benefits based on a determination that the plaintiff was not totally disabled is supported by a reasonable basis. It is not unusual in cases such as this to have conflicting opinions of the plan participant's treating doctors and the plan administrator's reviewing doctors. As long as a reasonable disagreement could exist regarding whether the plaintiff was "totally disabled" for purposes of the plan, it cannot be said the administrator acted arbitrarily and capriciously in disagreeing with the plaintiff's treating physicians. *Id.*

The plaintiff puts forward several arguments for why the administrator acted arbitrarily and capriciously. First, she argues that Aetna improperly required the plaintiff to support her claim with objective evidence. As stated previously, the letter denying the plaintiff's appeal makes clear that the administrator weighed all

the available evidence—both objective and subjective—in reaching the decision. While the lack of objective evidence played an important part in the decision, the record does not demonstrate that Aetna improperly demanded objective evidence without informing the plaintiff or that it altered the requirements of the plan.

Plaintiff essentially argues that Aetna should not be allowed to take the lack of objective evidence into account in making its decision, but instead should rely only on the plaintiff's subjective reports of pain and her doctors' unexplained conclusory opinions that she was disabled from performing any job. Surely the administrator cannot be required to limit its review in this way. *See id.* at 878 ("With a condition such as fibromayalgia, where the applicant's physicians depend entirely on the patient's reports for their diagnosis, their *ipse dixit* cannot be unchallengeable. That would shift the discretion from the plan administrator, as the plan requires, to the physicians chosen by the applicant who depend for their diagnosis on the applicant's reports to them of pain."). The record makes clear that the plaintiff reported abdominal pain, but the record also makes clear that even her doctors were unable to determine the source of the pain after performing a battery of tests for which the plaintiff consistently tested normal. After reviewing all of this evidence as well as taking into account the treatment the plaintiff was receiving from her doctors and the plaintiff's own reports of pain, the administrator determined that "the weight of medical information does not support a condition of total disability." Contrary to the plaintiff's contention, the administrator did in fact consider a variety of factors to determine whether the plaintiff's evidence of pain was credible. Aetna's letter denying the plaintiff's appeal provides a thorough explanation of its decision. It does not improperly require only objective evidence nor does it totally discount the plaintiff's subjective reports of pain. For these reasons, the administrator's decision was not arbitrary and capricious.

Plaintiff Mitchell also argues that Aetna terminated the plaintiff's benefits initially without a thorough review and that it should not be allowed to "buttress" its decision on appeal. This contention is without merit. Unlike the case cited by Plaintiff Mitchell, where all the evidence supported the plaintiff's claim at the time of the initial termination and the insurer thereafter sought a third opinion to counter the plaintiff's evidence, *Kosiba v. Merck & Co.*, 384 F.3d 58 (3d Cir.2004), in this case the evidence weighing against the plaintiff was already in the record at the time of the initial denial. It was this evidence that Dr. Raford reviewed in making his recommendation to deny the appeal. This was not a case of the administrator arbitrarily refusing to look at evidence in support of the plaintiff's claim. *See Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461 (1997). Aetna repeatedly advised the plaintiff to submit anything that she thought would help her appeal; however, the only support subsequently submitted on behalf of the plaintiff was Dr. Shimizu's conclusory opinion that the plaintiff was disabled from working at any job and a handwritten letter by the plaintiff herself. Dr. Raford's review of the available evidence was clearly not an attempt to "buttress" a record that was completely, or even largely, in the plaintiff's favor until that point.

Finally, the plaintiff argues that Dr. Raford is biased and his report cannot be considered as substantial evidence supporting the decision to terminate the plaintiff's benefits. The plaintiff's only evidence of Dr. Raford's bias is the fact that he performs a significant number of medical reviews for Aetna. Without more, this

is insufficient to prove that Dr. Raford was biased and that his report should be disregarded. On its face, Dr. Raford's report is far from being the rubber stamp that the plaintiff claims it to be. The report provides an extensive analysis and it consistently explains its conclusions. The plaintiff accuses Dr. Raford of "cherry picking" in his report, and cites to cases that condemn the "cherry picking" of evidence by plan administrators. *See, e.g., Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356 (6th Cir.2002). However, these cases make clear that "cherry picking" occurs when administrators fail to consider all the evidence, specifically excluding the consideration of evidence that might help the plaintiff's claim. *Id.* at 362. Dr. Raford's report does not suffer from this failure: Dr. Raford reviewed all the available evidence and his report accounts for the evidence that might support the plaintiff's claim.

In the end, because Aetna's decision is supported by a reasonable basis, the Court cannot conclude that Aetna abused its discretion in terminating the plaintiff's long-term disability benefits. Accordingly, judgment shall be entered in favor of Defendants and against Plaintiff Mitchell.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve, by United States mail or by telefax or by email, copies of this Order on counsel in this matter.