**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0588n.06**

**No. 08-1990**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 20, 2009**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| LINDA L. KIEL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LIFE INSURANCE COMPANY OF NORTH | ) | EASTERN DISTRICT OF MICHIGAN |
| AMERICA; CIGNA CORPORATION; | ) | |
| HENRY FORD HEALTH SYSTEM, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: MERRITT, COOK, and WHITE, Circuit Judges.

COOK, Circuit Judge. Linda Kiel sued the Life Insurance Company of North America ("LINA") under the Employee Retirement Income Security Act of 1974 ("ERISA") after LINA denied her application for long-term disability benefits ("LTD"). Kiel moved for summary judgment, and LINA moved to affirm the Administrator's denial of LTD and for judgment on its counterclaim for reimbursement of "overpaid" short-term benefits. The district court ruled for LINA, holding that it did not arbitrarily or capriciously deny Kiel's claim. Kiel appealed, and we affirm.

I.

No. 08-1990
*Kiel v. Life Insurance Company of North America*

Kiel received LINA health insurance and disability plans through her employer, the Henry Ford Health System. Under the policy, a claimant must provide "satisfactory proof of Disability" to receive benefits. The policy defines "Disability" in terms of the claimant's loss of the functional ability to perform her job without physical restrictions:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1.    unable to perform all the material duties of his or her Regular Occupation; and
> 2.    unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1.    unable to perform the material duties of any occupation for which he or she is, or may reasonably become qualified based on education, training, or experience; and
> 2.    unable to earn 60% or more of his or her Indexed Earnings.

Kiel stopped working on April 25, 2005, because of recurring pain in her upper abdomen. Her general surgeon, Dr. Vic Velanovich, suspected mesenteric panniculitis and her primary care physician, Dr. William Keimig, confirmed the diagnosis. Dr. Keimig advised Kiel not to return to work, prompting her to apply for short-term disability benefits. LINA approved her request in June.

August passed and Kiel's condition persisted, but she did not begin therapy. Instead, she successfully suppressed the pain with over-the-counter pain relievers, such as Tylenol and Motrin. LINA extended Kiel's short-term benefits and advised her, on September 25, that she may qualify for LTD. She subsequently applied.

As part of Kiel's LTD application, LINA required that Dr. Keimig complete a "Physical Abilities Assessment." This assessment sought medical documentation about Kiel's ability to physically perform aspects of her job, in order to ascertain whether she satisfied the policy's definition of disabled. When Dr. Keimig did not respond, LINA made another request and sought to speak with him several other times. Finally, when he had not responded by November 9, LINA denied the claim and informed Kiel that she lacked medical documentation to support restrictions so severe as to impair her from working.

Kiel appealed the denial in February and submitted medical records from Dr. Keimig. But again, the records merely reiterated the diagnosis and that she suffered from "fairly constant abdominal pain." They did not address whether the condition affected her ability to perform her job. LINA again denied the claim, and Kiel again appealed.

Around this time, LINA received a file from Unumprovident Corp. ("UNUM"), a company with which Kiel had another disability policy. UNUM's file included three days of video surveillance conducted during November, 2005. Although the activity comprised only a small fraction of the video time, the video showed Kiel performing a variety of physical chores: driving 190 miles non-stop; pushing a shopping cart; loading groceries into her vehicle; reaching overhead to close her car's tailgate; carrying a rug; and carrying full plastic trash bags. Two doctors—one procured by UNUM, and one by LINA—independently reviewed the tapes and agreed that Kiel's conduct was inconsistent with her complaints about physical impairments. Dr. Herbert Dean opined

that the video "does not support any impairment from abdominal pain," and Dr. Venkatachala Mohan concluded that "[b]ased on the information provided, she should be able to take her Motrin to help resolve the pain and continue to perform her duties."

LINA once more denied the claim, and Kiel requested that it review the decision. LINA agreed, but again informed her that, to succeed, she must submit new medical information documenting her inability to physically perform her job. Nonetheless, Dr. Keimig's records merely stated that her condition had not improved. He sent LINA a formal letter stating that Kiel could not return to work, but he did not submit documentation of any physical impairment. Consequently, LINA rejected this final appeal. Her administrative options exhausted, Kiel filed suit under ERISA. 29 U.S.C. § 1001 *et seq.*

## II.

We review de novo a district court's decision in an ERISA benefits case. *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002). And in cases like this, where the policy vests an administrator with discretion, we review the administrator's underlying determination under an arbitrary and capricious standard. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003). This "least demanding form of judicial review of administrative action" compels affirming the administrator's decision "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Hunter v. Caliber Sys.,*

*Inc.*, 220 F.3d 702, 710 (6th Cir. 2000) (quoting *Davis v. Ky. Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)).

On appeal, Kiel offers several purported deficiencies that make LINA's denial of LTD arbitrary and capricious. We address each in turn and conclude that they do not undermine LINA's reasoned explanation.

## A. Conflict of Interest

As the district court acknowledged, a conflict of interest existed because LINA both "determine[s] Kiel's eligibility . . . and also . . . pay[s] those same benefits." Such a "dual function creates an apparent conflict of interest," *Glenn v. Metlife*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd* 128 S. Ct. 2343 (2008), and we treat that conflict "as a 'facto[r] in determining whether there is an abuse of discretion," *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (quoting Restatement (Second) of Torts § 187 cmt. d (1959)). But while this conflict slightly favors Kiel, it does not overcome LINA's reasoned explanation—that Kiel did not provide documentation supporting restrictions on her physical ability to work.

## B. Medical Records

Kiel asserts that LINA arbitrarily ignored her medical records as documentation of her pain. But LINA disputes neither the diagnosis of mesenteric panniculitis nor Kiel's pain. LINA did not ignore these records, but declined to rely on them because they do not address the central

issue—Kiel's ability to physically perform her job. Despite repeated requests, Dr. Keimig never provided records documenting any physical impairment; he merely reaffirmed his diagnosis and Kiel's symptoms. Given that this information was unresponsive to LINA's concerns, it was not arbitrary or capricious to rely more heavily on other evidence that *did* address Kiel's functionality.

### C. Reliance on Independent File Reviews

Lacking documentation from Dr. Keimig, LINA relied on the independent reviews conducted by other doctors. Reliance on other nonexamining physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). LINA did not ignore Dr. Keimig; it simply found other physicians' opinions more responsive because they directly addressed whether Kiel's mesenteric panniculitis impairs her ability to work. Moreover, Kiel seeks to discredit both doctors, insisting that they lack the expertise to understand her condition. Nevertheless, both doctors had extensive internal medicine experience. We recognize that the video is not necessarily inconsistent with Kiel's claim of intermittent disabling pain, and that the independent reviews appear based on the film. However, given the absence of affirmative documentary support from Kiel's treating physician, LINA did not act arbitrarily or capriciously in relying on the other doctors' opinions.

### D. The Social Security Determination

Kiel also insists that LINA arbitrarily ignored her award of Social Security Disability Income ("SSDI"). She cites *Glenn v. MetLife*, 461 F.3d 660 (6th Cir. 2006), for the proposition "that the plan administrator was arbitrary in failing to consider the award of disability benefits that she secured from the Social Security Administration." Kiel seeks to estop LINA from disputing her disability because LINA implicitly acknowledged it by encouraging her to apply for SSDI in the first place. But her theory overlooks the difference between Social Security and ERISA benefits. Although the Social Security Administration's decision is relevant, it is not dispositive. For instance, Social Security determinations follow a highly deferential "treating physician rule" that does not apply in ERISA cases. *Nord*, 538 U.S. at 832–33 ("[C]ritical differences between the Social Security disability program and ERISA benefit plans caution against importing a treating physician rule from the former area into the latter."). Given these differences between the two regulatory schemes, LINA did not take a "blatantly inconsistent" position by denying Kiel's claim.

### E. Denial Letters

Kiel also criticizes LINA's denial letters as "inconsistent," "sloppy," and "disingenuine." Each letter, however, offers a consistent explanation for the denial—the lack of any medical documentation supporting restrictions on Kiel's ability to work. None of these letters exhibits symptoms of arbitrary or capricious review.

### F. Delays in LINA's Decision-Making Process

Kiel alleges that LINA acted arbitrarily and capriciously by repeatedly delaying its decision. For instance, she complains that "each letter was authored by a claims person rather than a qualified professional," that "the letters were never proofread," and that there was no file activity "between the time the extension was taken and the time decision was made." None of these accusations undermine LINA's reasoned explanation for either its decision or the delays.

### G. Expensive Nature of the Claim

Kiel further complains that LINA drove up the cost of proving her disability by making redundant demands. But when she claims that LINA could have conducted its own tests, she ignores that "[t]he insured employee bears the burden of proving his or her continuing 'disability'." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 289 (6th Cir. 2005). Kiel bore the burden of documenting any physical impairments, and her failure to do so forced LINA to make the very requests that Kiel complains about. The investigation's expense does not render LINA's decision arbitrary and capricious.

### III.

Finally, Kiel asserts that the district court erred by ordering her to reimburse LINA for overpaid short-term benefits. Her policy provided that: "An employee for whom Disability Benefits are payable under this Policy may be eligible for benefits from Other Income Benefits. If so, [LINA] may reduce the Disability Benefits by the amount of such Other Income Benefits." Because SSDI

constitutes "Other Income Benefits," the court ruled that LINA could recover $2,073.65 in "overpaid" benefits.

Kiel responds that the Court should estop LINA from seeking reimbursement because it did not recognize her disability when she received the SSDI award. But as the district court noted, Kiel did not refute LINA's claim for reimbursement and not addressing the issue, she forfeited it. Regardless, because the Social Security and ERISA regimes use different standards, no inconsistency results from LINA denying disability while pursuing reimbursement.

IV.

We affirm the decision of the district court.