NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0398n.06

No. 11-5268

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Apr 12, 2012*

LEONARD GREEN, Clerk

RICK O'BRYAN,                                      )
                                                   )
    Plaintiff-Appellant,                       )
                                                   )
v.                                                 )    ON APPEAL FROM THE
                                                   )    UNITED STATES DISTRICT
CONSOL ENERGY, INC.; LIBERTY LIFE                  )    COURT FOR THE EASTERN
ASSURANCE COMPANY OF BOSTON,                       )    DISTRICT OF KENTUCKY
                                                   )
    Defendants-Appellees.                      )
                                                   )

Before:  MARTIN, COOK, and KETHLEDGE, Circuit Judges.

PER CURIAM. Rick O'Bryan, a Kentucky resident represented by counsel, appeals a district court judgment in favor of the defendants in his case alleging a wrongful denial of long-term disability benefits, filed pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.  He also appeals the denial of his motion to alter or amend the district court's judgment based on new evidence, and the judgment in favor of the defendants on his claim for additional salary continuance benefits.

O'Bryan was born in 1959.  He worked for the defendant, Consol Energy, Inc. (Consol), from 1990 to 2004 as a surface coal mine foreman.  He was covered by Consol's long-term disability plan. In 2004, O'Bryan reported that he was unable to work due to pain.  O'Bryan was awarded salary continuance benefits for one year.  O'Bryan submitted treatment records from his physicians, showing that he had been diagnosed with fibromyalgia.  He also submitted evidence of degenerative disc disease, but no physician believed that this condition was the cause of O'Bryan's reports of disabling pain.  Consol submitted the information to Liberty Life Assurance Company (Liberty), a

third-party administrator of the long-term disability plan. The information was also sent to a physician, Dr. Hopkins, for review. Dr. Hopkins concluded that O'Bryan's allegations were not established, but that he might have a mental disability. Therefore, O'Bryan was awarded disability benefits for one year, the maximum period covered for mental disabilities.

Thereafter, O'Bryan's file was again reviewed by Liberty. O'Bryan had submitted further reports from his treating physicians opining that his mental diagnoses were the result of his physical impairment, rather than the reverse. Liberty elected to continue benefits while it reviewed the claim. O'Bryan was sent to Dr. Troutt for an independent medical examination. Dr. Troutt opined that O'Bryan could return to work following a reconditioning regimen. Liberty also paid for a surveillance report, which revealed that O'Bryan was observed getting in and out of his vehicle, walking normally, bending at the waist, putting fuel in his vehicle, pushing his riding mower in and out of the garage, and mowing the lawn. Meanwhile, O'Bryan had applied for Social Security disability insurance benefits, as required by the plan, and was awarded benefits. He submitted the award to the defendants, and repaid his benefits for the approximate two-year period he had received them from the Social Security award. Finally, the defendants submitted O'Bryan's medical records for a review to Dr. Lazoff, who disputed the diagnosis of fibromyalgia and the physical restrictions reported by O'Bryan's treating physicians. Ultimately, O'Bryan's claim for long-term disability benefits was denied based on the conclusion that there was insufficient medical evidence that he was unable to engage in any suitable employment. This lawsuit followed.

The district court found that the defendants' decision to deny further benefits was not arbitrary and capricious. O'Bryan moved to alter or amend that decision based on new evidence. He submitted evidence regarding Dr. Hopkins, which tended to indicate that she derived substantial income from reviewing disability cases and concluding that the claimants were not entitled to benefits. The district court denied the motion to alter or amend, finding that the evidence concerning Dr. Hopkins had been previously available and would not have produced a different result. Finally, the district court denied O'Bryan's claim that his salary continuance benefits had been underpaid by $3,417.13.

O'Bryan argues on appeal that the denial of benefits was arbitrary and capricious because it ignored his award of Social Security disability benefits, relied on expert opinions that were not as persuasive as those of his treating physicians, and placed too much weight on the surveillance report. He also argues that the defendants had a conflict of interest. O'Bryan also reasserts his arguments that his motion to alter or amend should have been granted, and that his salary continuance benefits were erroneously calculated.

Because the defendants' plan accorded "full discretionary authority" to the plan administrator in determining eligibility for benefits, the defendants' ultimate decision to deny long-term disability benefits is reviewed under the arbitrary and capricious standard. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006). A decision will not be found to be arbitrary and capricious where it is possible to offer a reasoned explanation for the outcome. *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010).

O'Bryan first argues that the defendants' decision was arbitrary and capricious because it ignored the decision of the Social Security Administration awarding him disability benefits. However, the defendants were not bound by the Social Security Administration's decision that O'Bryan was disabled. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 294 (6th Cir. 2005). O'Bryan argues that the defendants failed to explain why their decision differed from that of the Social Security Administration, citing *Glenn v. MetLife*, 461 F.3d 660, 667-69 (6th Cir. 2006). However, a review of the defendants' decision indicates that they did differentiate from the Social Security decision on the basis that: 1) the defendants had additional medical evidence that the Social Security judge did not; 2) the defendants were not required by law to defer to O'Bryan's treating physicians' opinions; and 3) the Social Security award was based, in part, on mental disability, a benefit which O'Bryan had already received the maximum award under Consol's plan. Therefore, O'Bryan has not demonstrated that the defendants' decision was arbitrary and capricious.

O'Bryan faults the defendants' reliance on the opinions of Drs. Hopkins, Troutt, and Lazoff over those of his treating physicians. He argues that Dr. Troutt's speculation that he could return to work after a period of reconditioning was insufficient to deny his claim for benefits, citing

*McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 170-71 (6th Cir. 2003). He also argues that reliance on the opinions of doctors who have not been provided all of the pertinent medical information is arbitrary and capricious, citing *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361-62 (6th Cir. 2002). O'Bryan cites *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), for the proposition that the defendants could not arbitrarily refuse to credit his treating physicians' opinions. However, the defendants did not rely solely on Dr. Troutt's speculation to deny his claim. Instead, the defendants found that O'Bryan had failed to substantiate the physical limitations reported by his treating doctors. While Dr. Lazoff may not have been provided the decision of the Social Security Administration, that was not medical evidence. The defendants were not obliged to accord special deference to the treating doctors, *id*. at 825, particularly where those doctors did not document the evidence supporting their conclusions. Requiring objective evidence of disability is not irrational or unreasonable. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007).

O'Bryan also faults the defendants' reliance on the surveillance report. According to him, the minimal activities disclosed in the report exhausted him and were not representative of sustained capability. However, it appears that the reviewing physicians concluded that O'Bryan's performance of the tasks described contradicted the symptoms he reported to his medical examiners. No arbitrary or capricious finding can be based on this reasoned explanation.

Finally, O'Bryan complains that the decision was arbitrary and capricious because the defendants have a conflict of interest given that they both decide the claim and pay the benefits. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-17 (2008). The district court clearly considered the possibility of a conflict of interest, and we agree with its conclusion that the use of a third-party administrator lowered the risk of a biased decision and that O'Bryan had no evidence of actual bias. For these reasons, we conclude that the defendants' decision to deny benefits was not arbitrary and capricious.

O'Bryan also appeals the district court's denial of his motion to alter or amend based on the evidence submitted concerning Dr. Hopkins. However, the district court properly concluded that this

evidence was previously available to O'Bryan, *see GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999), and would not have produced a different result. *See Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998).

Finally, O'Bryan appeals the district court's decision in favor of the defendants on the calculation of his salary continuance benefits. O'Bryan argues that his benefits were undercalculated because Consol used the date he started work, November of 1990, rather than rounding back to January of 1990, the calculation Consol uses to determine vacation eligibility. He points to language in the plan referring to an "equated employment date." This provision applies only to workers who left Consol's employment, but later returned. The two periods of employment are added in such cases to arrive at a start date of employment. There is no evidence that such a date is then rounded backwards to January of the relevant year, as is done in calculating vacation eligibility. O'Bryan cites *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 n.7 (6th Cir. 1998), for the proposition that ambiguous terms in an ERISA plan are interpreted against the drafter. However, he has failed to show that the term "equated employment date" is ambiguous, or that it even applies to him because he never had a break in employment.

The district court's judgment is affirmed.