RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0019p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

KAREN MCCLAIN,

        *Plaintiff-Appellant,*

    *v.*

No. 13-5395

EATON CORPORATION DISABILITY PLAN;
EATON CORPORATION HEALTH AND
WELFARE ADMINISTRATIVE COMMITTEE,

        *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:11-cv-00140—Curtis L. Collier, District Judge.

Decided and Filed:  January 24, 2014

Before:  BOGGS and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

————————————

## COUNSEL

**ON BRIEF:** Robert Scott Wilson, ERIC BUCHANAN & ASSOCIATGES, PLLC, Chattanooga, Tennessee, for Appellant.  Maynard A. Buck, Patrick O. Peters, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellee.

————————————

## OPINION

————————————

CLELAND, District Judge.  In this case for disability benefits brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, we are called upon to determine whether "some" constitutes "any."  Even more precisely, we

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

are called upon to determine whether it is rational to conclude that "some" constitutes "any." The relevant long-term disability plan provided that Plaintiff was disabled if she was "totally and continuously unable to engage in *any* occupation or perform *any* work for compensation or profit." (Emphasis added.) Defendants denied her claim for disability benefits because her treating physician opined she could work part-time, and a market study identified various part-time positions in the area for which she was qualified. Defendants thus took the position that Plaintiff was not totally disabled from doing *any* work because she could do *some* work. Our review is limited to determining whether this determination is arbitrary and capricious. The district court found that it is not. We agree, and **AFFIRM**.

## I. BACKGROUND

In connection with her employment as an assembler with Eaton Corporation, Plaintiff-Appellant Karen McClain obtained long-term disability insurance through the Eaton Corporation Disability Plan (the "Plan"). The Plan offered several levels of coverage, and Plaintiff purchased the highest level, which was "designed to replace . . . 70 percent of [her] monthly base pay." (R. 13, AR Pg. 00033.) Plaintiff ceased working in January 2008, due to a back injury she suffered on the job in June 2007. She received disability benefits during the first 24 months under the First Tier of the Plan's coverage, which defined disability as being "totally and continuously unable to perform the essential duties of your regular position with the Company, or the duties of any suitable alternative position with the Company." After 24 months, however, the Plan switched from an "own occupation" standard to an "any occupation" standard, providing Second Tier coverage if "you are totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience--at Eaton or elsewhere." (R. 13, AR Pg. 00033.)

As eligibility changed from an "own occupation" definition of disability, the Claims Administrator sought updated medical information from Plaintiff to determine eligibility for coverage under an "any occupation" definition of disability. Plaintiff

submitted medical records from Dr. Peter Boehm, a neurosurgeon who provided medical care to her from July 7, 2007 through June 30, 2009. Dr. Boehm found that she originally suffered from a compression fracture of the lumbar vertebra at L1, but that imaging also showed degenerative disc disease and osteoarthritis at L4-5 and L5-S1. (R. 13, AR Pg. 00124-25.) On January 2, 2009, Dr. Boehm noted in his records that Plaintiff's place of employment was requesting information on her returning to work, but that until she received a follow-up MRI and possibly additional steroid injections, he was "not willing to deal with her work status other than to continue her on light duty status." (R. 13, AR Pg. 000141.) In June 2009, Dr. Boehm transferred Plaintiff's care to a pain management physician, Dr. Neal Frauwirth, who then became Plaintiff's primary treating physician.

Dr. Frauwirth submitted medical information to the Claims Administrator, indicating that Plaintiff could work part time at a sedentary position with frequent rest, but that she had no ability to work full time. (R. 13, AR Pg. 00224.) His attending physician report listed her various restrictions, relating to lifting, moving, walking, bending, etc. For purposes of this appeal, however, the salient point is that Dr. Frauwirth limited Plaintiff to a part-time schedule, with certain restrictions.

Thereafter, a Transferable Skills Assessment ("TSA") was performed, which identified several positions accommodating Plaintiff's restrictions and capabilities, and which noted their hourly wage. The TSA listed telephone switchboard operator ($11.46/hour), information clerk ($11.46/hour), receptionist ($11.46/hour), telephone solicitor ($11.06/hour), and surveillance system monitor ($12.01/hour). (R. 13, AR Pg. 00284-85.) A Labor Market Survey ("LMS") located four positions locally, paying between $7.25 and $10.00 per hour, that both allowed for part-time work and met Plaintiff's physical restrictions.

On March 15, 2010, the Claims Administrator notified Plaintiff that she was not totally disabled as defined by the Plan, effective March 31, 2010. (R. 13, AR Pg. 00073-75.) The denial specifically references Dr. Frauwirth's restrictions, identifies possible

employment for Plaintiff as listed in the TSA and LMS, and states that, consequently, Plaintiff does not meet the definition of total disability under the Plan.

Plaintiff pursued her administrative appeals of this decision. During the first appeal, she obtained a file review by a non-examining orthopedic surgeon, Dr. Steven Lehmer. Dr. Lehmer reviewed the file and spoke with Dr. Frauwirth. Dr. Lehmer's notes of the conversation indicate that Dr. Frauwirth repeated Plaintiff's restrictions, and also stated that Plaintiff could return to work in a sedentary position. (R. 13, AR Pg. 00230.) There is no mention in Dr. Lehmer's notes of the conversation that Dr. Frauwirth limited the position to part-time work. His notes do state that Dr. Frauwirth last saw Plaintiff on February 10, 2010, and that, at that time, she reported experiencing pain at a level 3 out of 10. The notes also indicate that Plaintiff had become upset with Dr. Frauwirth regarding the restrictions, that she told him she had lost her disability benefits, and that she did not return to see him after that meeting. (*Id.*) Based on his review of the file and his conversation with Dr. Frauwirth, Dr. Lehmer concluded that Plaintiff was not disabled from "any occupation" because she could work in a sedentary position with certain restrictions. Dr. Lehmer did not note any requirement that she work only part time. On June 24, 2010, her first-level appeal was denied, based on her failure to meet the definition of disabled. (R. 13, AR Pg. 00083-86.) The denial details the medical records reviewed, Dr. Lehmer's conversation with Dr. Frauwirth, and the TSA jobs identified as suitable for Plaintiff's restrictions. Nowhere in the denial does it indicate that Plaintiff can perform only part-time work.

Plaintiff appealed to the next level, and the Claims Administrator reviewed additional medical records, including further documentation from Dr. Boehm. In his records, Dr. Boehm details that he saw Plaintiff again on July 2, 2010 and August 23, 2010. The July 2, 2010, report states:

> Plan: Recommend at this point Lortab 5/325 mg #30 with a refill and Flexeril 10 mg 3 times a day for 7 days #21. We will arrange a scan and I will see her back at that point. She advises that the physician that she was seeing in Cleveland advised that she could return to work in some capacity. Reviewing my records and I also indicated she could return to work with a limited lifting capacity. I will make further

recommendations regarding treatment when I see her films back at the time of her scan.

(R. 13, AR Pg. 00233.)

The Plan Administrator arranged for a neurological surgeon and an orthopedic surgeon from an independent medical review organization to review Plaintiff's claim file. Both doctors found that Plaintiff was not disabled under the terms of the Plan. The neurological surgeon submitted a report stating that Plaintiff was capable of returning to work with various restrictions, and that Plaintiff was capable of working in a sedentary position. (R. 13, AR Pg. 00244-48.) Additionally, the neurological surgeon found that Dr. Frauwirth's restriction of a fifteen-minute rest period every hour was not medically necessary, particularly for a sedentary position, and thus he deleted that restriction. (R. 13, AR Pg. 00247.) The orthopedic surgeon also reviewed the claim file and concluded that Plaintiff was "able to return to full duty work without limitations. Further treatment or diagnostic testing is neither reasonable nor appropriate." (R. 13, AR Pg. 00253.) After detailing all the objective medical evidence reviewed, the orthopedic surgeon further stated, "The claimant could perform any occupation certainly with these restrictions from 04/01/2010 to present. The claimant should actually be able to return to work full duty without limitations at this point, as the multiple examinations performed and the imaging studies do not support further limitations or restrictions as noted." (R. 13, AR Pg. 00254.)

The Plan Administrator reviewed Plaintiff's entire file, including all her treating physician's records as well as the independent medical reviews by the orthopedic and neurological surgeons. After reviewing the entire claim file, on December 21, 2010, the Plan Administrator determined that Plaintiff was not disabled from any occupation, and denied her final appeal. (R. 13, AR Pg. 00052-54.) The final determination does not mention any restriction that Plaintiff work only part time.

Plaintiff timely sought review of the Administrator's denial in federal court. The district court granted judgment to Defendants, and Plaintiff timely appealed.

## II. STANDARD OF REVIEW

Denials of benefits challenged under 29 U.S.C.§ 1132(a)(1)(B) are reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Marks v. Newcourt Credit Group, Inc*., 342 F.3d 444, 456-57 (6th Cir. 2003). "If a plan affords such discretion to an administrator or fiduciary, we review the denial of benefits only to determine if it was 'arbitrary and capricious.'" *Marks*, 342 F.3d at 456 (citing *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991)). Here, the parties agree that the plan affords the administrator discretion, and thus the arbitrary and capricious standard applies.

When reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (citing *Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 437 (6th Cir. 1997)). This limitation applies to both an arbitrary and capricious and a *de novo* standard of review. *Miller,* 925 F.2d at 986 (citations omitted).

Under the arbitrary-and-capricious standard, the determination of an administrator will be upheld if it is "rational in light of the plan's provisions." *Marks*, 342 F.3d at 457 (quoting *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998)).

Finally, on appeal, we review *de novo* the district court's finding that the administrator's denial was not arbitrary and capricious. *Killian v. Healthsource Provident Administrators, Inc.,* 152 F.3d 514, 520 (6th Cir. 1998) (citing *Miller*, 925 F.2d at 986).

## III. ANALYSIS

Fifteen years ago, the Seventh Circuit correctly stated that review under the arbitrary and capricious "standard is extremely deferential and has been described as the least demanding form of judicial review." *Cozzie v. Metropolitan Life Ins. Co*., 140 F.3d

1104, 1107-08 (7th Cir. 1998) (citing *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996)). This is true, and the "least demanding form of judicial review" should not be exacting to apply. But, in *Cozzie*, after explaining the "extreme deference" due to the administrator, the Seventh Circuit continued to state that the standard "is not, however, without some teeth," and cited an earlier Seventh Circuit case for the proposition that the court should not merely "rubber stamp" plan administrator decisions that run contrary to the plain meaning of a disability plan. *Id.* at 1108 (citing *Swaback v. American Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996)). This language—memorable as it is, and certainly appropriate in *some* cases—seems to have become the *cri de guerre* of ERISA plaintiffs nearly every time the arbitrary and capricious standard is at hand. In recent years, the standard is seldom recited in this circuit without the invocation of teeth and rubber stamps. (*See*, *e.g.,* Appellant's Br. at 4.) These cautionary metaphors, at times, may have even eclipsed the meaning of the standard and rendered arbitrary and capricious review nearly indistinguishable from the competing, and more demanding, *de novo* review standard. But, even the Seventh Circuit, in the case which crafted the language, concluded its opinion by upholding the administrator's decision, "[g]iven the extremely deferential standard of review that must govern our adjudication," and finding that it could not be determined that the administrator "reached an unreasonable result on the facts of this particular case." *Cozzie*, 140 F.3d at 1111.

In other words, though the standard is not without some teeth, it is not all teeth. An "extremely deferential review," to be true to its purpose, must actually honor an "extreme" level of "deference" to the administrative decision. "A decision reviewed according to the arbitrary and capricious standard must be upheld if it results from a deliberate principled reasoning process' and is supported by 'substantial evidence.'" *Schwalm v. Guardian Life Ins. Co. of America,* 626 F.3d 299, 308 (6th Cir. 2010) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (quoting *Davis v.*

*Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)).  Defendants' decision to deny benefits in this case easily clears this hurdle.

Plaintiff first argues that Defendants are restricted, at this juncture, by Dr. Frauwirth's assessment that Plaintiff is limited to no more than part-time, sedentary employment.  Plaintiff contends that any attempt to argue she could do more than part-time work would constitute an impermissible *post hoc* rationalization.  *See, generally, University Hosps. of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 849 n.7 (6th Cir. 2000) ("[I]t strikes us as problematic to, on one hand, recognize an administrator's discretion to interpret a plan by applying a deferential 'arbitrary and capricious' standard of review, yet, on the other hand, allow the administrator to 'shore up' a decision after-the-fact by testifying as to the 'true' basis for the decision after the matter is in litigation, possible deficiencies in the decision are identified, and an attorney is consulted to defend the decision by developing creative *post hoc* arguments that can survive deferential review.").  Relatedly, Plaintiff also argues that Defendants are restricted to the reasoning expressed in the initial denial, that is, relying on the restrictions provided by Dr. Frauwirth, which Plaintiff contends must include the part-time limitation.  Plaintiff relies on *Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 882 (6th Cir. 2007), which held that the defendant cannot change its denial basis in the midst of administrative review, without affording the claimant an "opportunity to respond to the second, determinative reason for the termination."

Both of Plaintiff's cited cases, however, are inapposite to the situation presented here.  Defendants have consistently denied Plaintiff's claim for benefits for the same reason, that she does not meet the definition of disability, and have afforded Plaintiff the opportunity to submit additional medical records in support of her claim to the contrary.  This is a wholly different scenario than that in *Wenner*, where the defendant indicated it would deny the claim for benefits unless the plaintiff submitted particular documentation and, after the plaintiff submitted the documentation, denied the benefits for a completely different reason.  *Id.* at 880-81.  Here, the March 15, 2010, denial stated that Plaintiff did not meet the definition of disability, albeit explaining that there were

positions in the area that met Dr. Frauwirth's limitations. Her first appeal was also denied for failure to meet the definition of disability, as was her final appeal. At all stages of the administrative process, Plaintiff's claim was denied based on an inability to show she was disabled, and at all stages she was permitted to submit additional medical evidence to contest that finding. There has been no "about face" in the reason Defendants denied her claim.

Defendants assert, as they have throughout this litigation, that Plaintiff does not meet the Plan's requirement that she is "totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which [she is], or may become, reasonably well fit by reason of education, training or experience at Eaton or elsewhere." Defendants set forth alternative arguments, that the administrative record supports her ability to return to sedentary work, at either a full-time or a part-time schedule, and that under either schedule she does not meet the definition of disability.

To the extent that Defendants assert Plaintiff is able to return to work full time, with limitations, this determination is not arbitrary and capricious. Plaintiff argues that Defendants are "cherry picking" from Dr. Frauwirth's medical records, and reading out of his records his limitation to part-time work. *See Myers v. Hercules*, 253 F.3d 761 (4th Cir. 2001); *see also Spangler v. Lockheed Martin Energy Systems, Inc.*, 313 F.3d 356 (6th Cir. 2002). But this is not the case. The administrative record reveals that Defendants gave due consideration to Dr. Frauwirth's opinions, and to the independent doctors who reviewed his records and consulted with him. According to Dr. Lehmer's notes of his conversation, Dr. Frauwirth listed various restrictions, and recommended sedentary work, but there is no notation that Dr. Frauwirth continued to press his limitation of part-time work. Although there is no express indication that Defendants necessarily discredited Dr. Frauwirth's original limitation of part-time work, even if they had, it would not stand as an unreasonable—or "cherry-picked"—finding in light of the bulk of the administrative record.

In any event, "the ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether

its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002).  For this determination, the whole of the administrative record must be reviewed.  *Id.*  And the whole of the administrative record—including *not only* Dr. Frauwirth's records, but also the records of her other treating physician, Dr. Boehm, along with Dr. Lehmer's conclusions, and the review of two independent doctors—provides ample support for the administrator's "reasoned explanation, based on the evidence" to deny Plaintiff's claim for benefits. *Davis,* 887 F.2d at 693.  This is true whether or not Defendants accepted that Plaintiff was limited to part-time work.

But even if Defendants are restricted to Dr. Frauwirth's limitation to part-time work, it was not arbitrary and capricious to conclude that Plaintiff's ability to work part time precludes her from being disabled under the Plan.  Here, the administrative record indicates that Plaintiff's treating physician cleared her for work on a part-time basis, with restrictions.  The TSA and LMS identified potential part-time jobs in Plaintiff's local area which could accommodate her restrictions.  Plaintiff argues that earnings provided by the part-time jobs identified by Defendant would place her below the poverty line for an individual, and would earn her less than one-third what she made prior to becoming disabled.  Plaintiff asserts that requiring her to subsist at this level would frustrate the purpose of the disability plan she purchased, given that she opted for the plan that would provide her with 70% of her predisability wages.  According to Plaintiff, it is therefore arbitrary and capricious to interpret the Plan to allow her ability to work part time to prevent a finding that she is "totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which [she is], or may become, reasonably well fit by reason of education, training, or experience—at Eaton or elsewhere."

Plaintiff relies heavily on *VanderKlock v. Provident Life and Accident Ins. Co.*, 956 F.2d 610, 614-15 (6th Cir. 1992).  In *VanderKlock*, the court stated:

> The clause at issue in the present case states that a claimant must "be prevented from engaging in every business or occupation and from performing any work for compensation and profit."  We agree with the

> courts in *Helms v. Monsanto Co., Inc.*, 728 F.2d 1416, 1421 (11th Cir. 1984) and *Torix v. Ball Corp.*, 862 F.2d 1428, 1430 (10th Cir. 1988) that the phrase "prevented from engaging in every business or occupation" cannot be construed so narrowly that an individual must be utterly helpless to be considered disabled and that nominal employment, such as selling peanuts or pencils which would yield only a pittance, does not constitute a "business or occupation." Instead, a claimant's entitlement to payments based on a claim of "total disability" must be based on the claimant's ability to pursue "gainful employment in light of all the circumstances." *Torix*, 862 F.2d at 1431.

*VanderKlock*, 956 F.2d at 614-15.[1]  *VanderKlock*, which was based on the Eleventh Circuit's decision in *Helms*, was further extended by an unpublished decision in this circuit, *Tracy v. Pharmacia & Upjohn Absence Payment Plan*, 195 F. App'x 511, 519 (6th Cir. 2006).  In *Tracy*, the court cited *VanderKlock*'s holding that "a claimant's entitlement to payments based on a claim of total disability must be based on the claimant's ability to pursue gainful employment in light of all the circumstances," but then noted that *VanderKlock* had not further elaborated "on what constituted gainful employment." *Id.*  The *Tracy* court thus held:  "We now further adopt the holding in *Helms* that 'gainful employment' is that employment from which a claimant may 'earn a reasonably substantial income rising to the dignity of an income or livelihood, even though the income is not as much as he earned before the disability.'" *Tracy*, 195 F. App'x at 519 (citing *Helms*, 728 F.2d at 1421-22 and *Torix*, 862 F.2d at 1428 (also adopting the standard set forth in *Helms*)).  But though the language in *VanderKlock*'s plan is similar to that at issue in this Plan, we are not convinced that the part-time jobs proposed by the TSA constitute wages at a mere "pittance," such as to qualify Plaintiff as disabled.  Indeed, that is not even the question.  Under an arbitrary and capricious standard, honoring the extreme deference due the administrator, we are not convinced it was irrational to have concluded that an ability to work part time does not meet the definition of totally disabled to engage in *any* occupation or perform *any* work for

---

[1]Defendants argue that this statement in *VanderKlock* is dicta.  After making this statement, the court in *VanderKlock* found that the administrator had breached some of ERISA's procedural requirements, and thus remanded the case to the district court to allow the plaintiff to submit additional medical records. *VanderKlock*, 956 F.2d at 618-19.

compensation. It is reasonable to conclude that an ability to do some work means one is not unable to do "any work."

Finally, the administrator's interpretation of the Plan's language is consistent with multiple other federal courts, as cited by Defendants. *See Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 655-56 (5th Cir. 2009) (finding the fact that the plaintiff was working part time supported a determination that she was not was not unable to perform "any occupation"); *Brigham v. Sun Life Canada*, 317 F.3d 72, 83-84 (1st Cir. 2003) (holding that paraplegic was not "totally disabled, *i.e.*, physically unable to work on even a part-time basis"); *Bond v. Cerner Corp.*, 309 F.3d 1064, 1067-68 (8th Cir. 2002) (recognizing that "total disability" precluded a claimant who was able to work part time); *Doyle v. Paul Revere Life Ins. Co.*,144 F.3d 181, 186 (1st Cir. 1998) (finding that a capacity to work part time supports finding that claimant was not "totally disabled from any occupation") ; *Shane v. Albertson's Inc. Employees' Disability Plan*, 381 F. Supp. 2d 1196, 1206 (C.D. Cal. 2005) (finding that a claimant who could work part time did not meet the plan's requirement of a "complete inability of the Employee to perform any and every duty of any gainful occupation"); *see also Graeber v. the Hewlett Packard Co. Employee Benefits and Income Protection Plan*, 421 F. Supp. 2d 1246, 1254 (N.D. Cal. 2006) (finding that the plaintiff was not totally disabled if he could work part-time); *Mullaly v. First Reliance Standard Life Ins., Co.*, 253 F. Supp. 2d 279, 283-84 (C.D. Conn. 2003) ("In the absence of clear language permitting part-time employment, courts have uniformly declined to consider a claimant, who is capable of working part-time, eligible for benefits under a general disability policy." (collecting cases)). This consistency lends further support to a finding that Defendants' decision was the result of a "deliberate principled reasoning process" *Schwalm,* 626 F.3d at 308. We cannot find Defendants' denial of benefits arbitrary or capricious under these circumstances.

## IV.  CONCLUSION

The arbitrary-and-capricious standard restricts our review to determining whether the administrator's decision is rational under the plan's provisions. Giving the

administrator the proper deference, we find that its decision was not unreasonable.  The judgment of the district court is **AFFIRMED**.