NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0533n.06

No. 15-4293

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 14, 2016
DEBORAH S. HUNT, Clerk

LLOYD BROWN, III,                               )
    Plaintiff-Appellee,                     )
                                            )
v.                                              )
                                            )
UNITED OF OMAHA LIFE INSURANCE                  )   ON APPEAL FROM THE
COMPANY,                                        )   UNITED STATES DISTRICT
                                            )   COURT FOR THE SOUTHERN
    Defendant-Appellant,                    )   DISTRICT OF OHIO
                                            )
and                                             )   OPINION
                                            )
WEST SIDE TRANSPORT, INC.,                      )
                                            )
    Defendant.                              )

BEFORE:    KEITH, COOK, and STRANCH, Circuit Judges.

**STRANCH, Circuit Judge.**    Lloyd Brown III alleged, originally in state court, that Defendant-Appellant United of Omaha Life Insurance Company and Defendant West Side Transport, Inc. wrongfully denied him life insurance benefits.  Following United's removal of the case to federal court, Brown III asserted contractual and equitable state law claims and, in the alternative, causes of action under the Employee Retirement Income Security Act of 1974 (ERISA).  The district court concluded that Brown III's state law claims against United and West Side were preempted by ERISA, granted summary judgment to Brown III on the merits of his ERISA § 502(a)(1) claim against United, and found that Brown III was "not entitled to relief under" ERISA § 502(a)(3) "because § 502(a)(1)(B) fully provides a means for the relief sought."

The district court then awarded Brown III $181,666.67 in damages for benefits due him under United's life insurance policy, prejudgment interest, and $27,040.00 in attorneys' fees. United appeals the judgment and remedies awarded.

For the reasons below, we **AFFIRM** the district court's grant of summary judgment to Brown III on the merits of his § 502(a)(1) claim, as well as its awards of prejudgment interest and attorneys' fees; **REVERSE** the district court's summary judgment to United on Brown III's § 502(a)(3) claim; and **REMAND** with instructions to determine the amount of Brown III's award under 502(a)(1) and to determine whether Brown III is entitled to other appropriate equitable relief under § 502(a)(3) for a separate and distinct injury.

## I.  BACKGROUND

Lloyd Brown II, Plaintiff-Appellee's father, worked as a truck driver for West Side from January 2011 until his death on November 27, 2012. West Side offered employees an optional term life insurance policy through Hartford Insurance Company. On December 16, 2011, Brown II submitted a "Benefit Election Authorization" for $30,000 of life insurance, naming Brown III as his beneficiary, through Hartford's automated call-in system. Hartford approved the life insurance policy with an effective date of February 1, 2012.

West Side subsequently terminated its relationship with Hartford, also effective February 1, after which it instead offered optional term life insurance through United. Despite the switch in providers, on February 1 West Side began deducting $4.68 per week in life insurance premiums, labeled as "OPT LIFE INSUR," from Brown II's paychecks. Pursuant to the terms of United's policy, this amount corresponds to $30,000 of life insurance coverage—the amount applied for by Brown II in December 2011. From at least March 21 until Brown II's death on November 27, however, West Side withheld $28.34 per week, which corresponds to $181,666.67

of coverage. Brown III alleges that this increase in the amount of deductions evidences a request by Brown II to increase the value of his policy.

Following Brown II's death on November 27, 2012, Brown III filed a claim with United for the benefits allegedly due him. On February 20, 2013, United refused Brown III's request because Brown II had failed to submit "evidence of insurability." Employees insured by Hartford prior to United's takeover became insured by United without submitting evidence of insurability on February 1. But United explained that Brown II, despite "verbally enroll[ing]," "did not have voluntary life insurance coverage" with Hartford because West Side cancelled its agreement with Hartford effective February 1, the date Brown II's coverage was to take effect. Brown III filed an administrative appeal, which United rejected for the same reasons on May 9, 2013, concluding that the premiums West Side had "collected . . . in error" should be refunded. Brown III then filed the present action.

## II. STANDARD OF REVIEW

United challenges the district court's grant of summary judgment to Brown III on his § 502(a)(1) ERISA claim. We review grants of summary judgment de novo. *See V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). Summary judgment is proper only when the evidence—taken with all reasonable inferences drawn in favor of the nonmoving party—"establishes that there is no genuine issue as to any material fact," such that the movant is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There exist genuine issues of material fact when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

United also appeals the district court's award of prejudgment interest and attorney's fees to Brown III. We review such awards under an abuse of discretion standard. *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619–20 (6th Cir. 1998) (citations omitted). "An abuse of discretion occurs when the district court relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 681 (6th Cir. 2013) (quoting *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011)).

## III.  ANALYSIS

"ERISA comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (quoting 29 U.S.C. § 1002(1)). The district court determined that the optional term life insurance policy offered by United is an employee benefit plan regulated by ERISA—a decision unchallenged on appeal. ERISA § 502(a)(1) allows plan beneficiaries to bring a civil action to, among other things, "recover benefits due to him under the terms of [a] plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) provides for "other appropriate equitable relief." *Id.* § 1132(a)(3). Brown III seeks recovery under § 502(a)(1) and, to the extent he is unsuccessful, alternatively under § 502(a)(3), as well as prejudgment interest and attorneys' fees. We address each of these issues in turn.

A.      **Recovery of Benefits under ERISA § 502(a)(1).**

    1.   Legal Standard.

Where a plan grants a plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," as United's policy does, a denial of benefits is reviewed under an "arbitrary and capricious" standard. *Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 933 (6th Cir. 2000) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (en banc)). Under this "highly deferential" standard, we must affirm the denial of benefits unless it is arbitrary and capricious; if the decision is "rational in light of the plan's provisions" and "based on a reasonable interpretation of the plan," it must be upheld. *Id.* at 933–34 (citations omitted). We review de novo a district court's application of the arbitrary and capricious standard. *See Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006) (citing *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005)).

The arbitrary and capricious standard "is not . . . without some teeth." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation omitted). "Congress enacted ERISA 'to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits.'" *Shelby Cty. Health Care Corp.*, 203 F.3d at 934 (quoting *Firestone Tire & Rubber Co.*, 489 U.S. at 113). Accordingly, "the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Evans*, 434 F.3d at 876 (citing *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005)). A plan administrator must "discharge its duties with respect to the plan in accordance with the documents and instruments governing the plan" and, "[i]n interpreting the

provisions of a plan, . . . adhere to the plain meaning of its language, as it would be construed by an ordinary person." *Shelby Cty. Health Care Corp.*, 203 F.3d at 934 (citations omitted).

Where a plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," as United did here, "this dual role creates a conflict of interest," and "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (citing *Firestone Tire & Rubber Co.*, 489 U.S. at 115). While "[v]arious circumstances affect the weight we accord the conflict"—including whether there is "a long history of biased claims administration" or "active steps to reduce potential bias and to promote accuracy," *Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 392–93 (6th Cir. 2009) (citing *Glenn*, 554 U.S. at 117)—"the potential for self-interested decision-making is evident," and "[t]he reviewing court looks to see if there is evidence that the conflict in any way influenced the plan administrator's decision," *Evans*, 434 F.3d at 876 (citation omitted).

2. Denial of Benefits.

United maintains that its decision to deny benefits to Brown III was reasonable and rational, and supported by substantial evidence and the plain language of its plan. United argues, as it did when it denied Brown III benefits, that it agreed to assume the risk of any policies *in effect* under Hartford's prior plan as of January 31, 2012—the day before West Side changed its providers. Although applied for in December 2011, Brown II's coverage with Hartford had an effective date of February 1. According to United, because Brown II's coverage had not taken effect on January 31 it was not "grandfathered in," and thus he was required to submit evidence of insurability to be covered, which he did not do. The essential question before us is whether

United's interpretation of its plan as requiring Brown II to submit evidence of insurability to be covered was arbitrary and capricious.

Based on isolated language in the terms of the plan, Brown III raises an initial argument that United has a duty to affirmatively request evidence of insurability when it is required. For example, the plan defines "evidence of insurability" as "proof of good health *acceptable to Us*. This proof may be obtained through questionnaires, physical exams or written documents, *as required by us*." It is undisputed that United never requested evidence of insurability and also that Brown II failed to submit such. But United responds that "as required by us" could be read merely to apply discretion to the type of evidence required—questionnaires, physical exams, or written documents—not to the requirement itself absent an affirmative request. The other provisions cited by Brown III are similarly ambiguous, and elsewhere the plan could be read to require evidence of insurability as necessary for coverage, with or without a request. Brown III relies on *Silva v. Metropolitan Life Insurance Co.*, 762 F.3d 711 (8th Cir. 2014), but we find the case inapposite because it applied an abuse of discretion standard, rather than an arbitrary and capricious standard, while finding genuine issues of material fact as to the meaning of "evidence of insurability" and whether the claimant had met the requirement. 762 F.3d at 717. We cannot say that United's interpretation of that plan language is arbitrary and capricious.

Brown III then asserts that the plan did not require evidence of insurability in this situation. Relevant provisions are found in a section of the plan titled "GUARANTEE ISSUE AMOUNT(S) AND EVIDENCE OF INSURABILITY," which contains five subsections that list circumstances for which "Evidence of Insurability is required." United identifies two of the five subsections as requiring Brown II to submit evidence of insurability. First, subsection d) states that evidence of insurability is required for "an Employee or Dependent who was eligible for

insurance under a Prior Plan but did not elect such insurance." Inversely stated, evidence of insurability is not required of an employee who was "eligible for" and "elected" insurance under the prior plan. The district court determined that subsection d) did not require Brown II to submit evidence of insurability because he was eligible for insurance with Hartford and elected to participate in the prior plan through his December 2011 phone call.

United first incorrectly criticizes the application of this provision as the district court's own, not originally advanced by Brown III, and thus robbing United of an opportunity to respond. As Brown III points out, he did make this argument before the district court. United also complains that the district court improperly substituted its own interpretation of "elected," which it argues is ambiguous, undefined, and could be interpreted reasonably to require that coverage be in effect under the prior plan. *See Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995) ("[W]e grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms.").

Nevertheless, in interpreting terms of a plan, the plan administrator must "adhere to the plain meaning of its language, as it would be construed by an ordinary person." *Shelby Cty. Health Care Corp.*, 203 F.3d at 934 (citations omitted). Therefore, we first examine the plain meaning of the term "elect." Merriam-Webster defines the transitive verb "elect" as "to make a selection of" or "to choose (as a course of action) especially by preference." *Elect*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/elect (last visited August 8, 2016). Black's Law Dictionary defines "election" as "[t]he exercise of a choice." *Election*, Black's Law Dictionary (10th ed. 2014). Elsewhere in the record, moreover, United used the term "elected" to mean "selected" or "chose"—not that coverage was in effect or an employee was insured—in accordance with the dictionary definitions above. Even the form memorializing Brown II's

voice authorization was titled "Benefit Election Authorization." The arbitrary and capricious standard of review allows plan administrators to interpret the plan reasonably, it does not allow them to modify the plan terms. "Interpretation and modification are different; the power to do the first does not imply the power to do the second." *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1108 (7th Cir. 1998). Here, as evidenced by the plain meaning of the word and the plan itself, the term "elect" most likely means "select" or "choose." We reject as arbitrary United's modification of the term.

United lastly asserts that interpreting "elected" not to require coverage to be in effect would lead to an absurd result—namely, that Hartford would have owed Brown III benefits had Brown II died between December 16, 2011 and February 1, 2012. But this argument misreads the district court's interpretation. Whether Brown II was "covered" under the prior plan is irrelevant to whether he was required to submit evidence of insurability to be covered under United's plan: all that matters is that he "elected" insurance with Hartford. Therefore, to deny Brown III's claim on the basis that he was required to submit evidence of insurability under subsection d), United would have had to arbitrarily and capriciously ignore or modify the term "elected."

The second subsection United identifies as requiring Brown II to submit evidence of insurability is subsection e), which requires such evidence when "an Employee or Dependent whose amount of insurance elected under the Policy is in excess of the amount of insurance that was in-force under a Prior Plan the day before the Policy Effective Date, unless during a Subsequent Enrollment Period or as otherwise stated or allowed in the Policy." Because Brown II had no coverage under the prior plan, United argues, the $30,000 he elected was "in excess of the amount of insurance that was in-force under a Prior Plan," requiring evidence of insurability.

Emphasizing that subsection e) directs comparison of the amount elected under the plan to the amount "in-force" under the prior plan, Brown III responds that subsection e) is inapplicable where the employee's coverage was not in effect under the prior plan. More persuasive, though, is that subsection e) allows for exceptions to its requirement "as otherwise stated or allowed in the Policy." The guarantee issue amount clause provides one such exception. That clause states that an employee's "Guarantee Issue Amount," defined elsewhere as "the amount of life insurance We may issue without requiring Evidence of Insurability,"

> is 5 times Your Annual Earnings or $150,000, whichever is less, unless You were insured under a Prior Plan. If you were insured under a Prior Plan, Your Guarantee Issue Amount is equal to the amount of insurance that was in-force for You under a Prior Plan the day before the Policy Effective Date.

Pursuant to the guarantee issue amount, because Brown II was not *insured* under the prior plan, his initial election of $30,000 does not require evidence of insurability, as it is less than $150,000. *See Insured*, Black's Law Dictionary (10th ed. 2014) (defining the noun "insured" as "someone who is covered or protected by an insurance policy"). Thus, United's interpretation that Brown II was required to submit evidence of insurability under subsection e), which provides an exception for the guarantee issue amount, was arbitrary and capricious.

Because United arbitrarily and capriciously found that Brown II was not covered by its plan, we affirm the district court's grant of summary judgment to Brown III on the merits of his § 502(a)(1) claim.

### 3. Amount of Benefits Due.

United next challenges the district court's conclusion as to the amount of benefits due to Brown III under the policy. United's position is that, assuming Brown II was covered under the plan, it still limits Brown III's benefits to $30,000 because "there is no evidence in the record that [Brown II] ever requested any more." United points to censuses in the administrative record

that list Brown II as having $150,000 in coverage to argue that "West Side may have flipped [Brown II's] coverage information with that of the employee listed directly above him," who had previously had that amount before being listed with $0. In contrast, the district court relied on the amount deducted from Brown II's paycheck at the time of his death: "$122.81 per month for life insurance at a rate of $0.676 per $1000 of coverage—resulting in $181,666.67." Brown III maintains that United's theory that West Side mistakenly listed Brown II as having $150,000 does not explain why an even higher amount worth $181,666.67 in coverage was deducted starting in March 2011. Brown III asserts that the increase in deductions is evidence enough of a request by Brown II, as otherwise he would have objected. We agree.

The next question we must answer is whether Brown II was required to submit evidence of insurability to increase the amount of his coverage. United argues that he was, relying on subsections b) and c) of the "EVIDENCE OF INSURABILITY" section, as well as the "WHEN ELECTION CHANGES ARE PERMITTED" section. Subsection b) requires evidence of insurability for "any amount of insurance elected in excess of a Guarantee Issue Amount for the Employee or Dependent," and subsection c) requires it for "any increase in the amount of insurance after the initial election of insurance for the Employee or Dependent, unless during a Subsequent Enrollment Period or as otherwise stated or allowed in the Policy." The "ELECTION CHANGES" section states, "An Employee may elect, drop, increase, decrease or change insurance as allowed by the Policyholder. Any election of or increase in insurance for an Employee or Dependent will require Evidence of Insurability unless otherwise stated or allowed in the Policy."

But because, as explained above, Brown II's guarantee issue amount was $150,000, or five times his annual salary (whichever is less), none of these provisions required Brown II to

submit evidence of insurability for an increase up to that amount. Subsection b) hinges entirely on the guarantee issue amount, and subsection c) and the "ELECTION CHANGES" section—like subsection e)—allow an exception for the guarantee issue amount. United's interpretation that Brown II's guarantee issue amount was $30,000 rests on its interpretation that he was "insured" under the prior plan, which for the reasons explained above is an arbitrary and capricious interpretation. All of these subsections, however, do appear to require evidence of insurability to the extent Brown II's coverage increase surpassed $150,000 or five times his annual salary, "*whichever is less*." Because there is no evidence of Brown II's annual salary in the record, we cannot say with fair assurance that $150,000 was the lesser amount.[1] Accordingly, we remand for the district court to determine whether Brown II was entitled to $150,000 or some lesser amount as a result of his annual salary.

## B. Other Equitable Relief under ERISA § 502(a)(3).

To the extent Brown III is unsuccessful on his denial of benefits claim under § 502(a)(1), he relies on a breach of fiduciary duty theory to assert that he is entitled to "other appropriate equitable relief" under § 502(a)(3)—ERISA's "catch-all provision."[2] A plaintiff cannot use ERISA's catch-all provision to "repackage" a § 502(a)(1) denial-of-benefits claim as an action for breach of fiduciary duty, or to pursue a "duplicative or redundant remedy." *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372–73 (6th Cir. 2015) (en banc).

---

[1]At oral argument counsel for Brown III estimated Brown II's salary to be around $55,000 annually. United disputed this calculation at oral argument and the record is silent on this issue.

[2]Although Brown III did not cross-appeal the district court's judgment against him on this issue, an "appellee may, without taking a cross-appeal, urge in support of a decree any matter in the record," *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924) (citations omitted), because "[a] prevailing party seeks to enforce a district court's judgment, not its reasoning," *Jennings v. Stephens*, 135 S. Ct. 793, 796 (2015) (citation omitted).

> A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate [to make the claimant whole].

*Id.* at 372. Where a claimant asserts an injury "separate and distinct from the denial of benefits," then dual ERISA claims and remedies may be appropriate. *See id*; *see also Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840–42 (6th Cir. 2007) (holding that claimant may bring both a § 502(a)(1) and § 502(a)(3) claim where he alleges "two separate and distinct injuries": a standard denial-of-benefits injury pursuant to the plan terms and that the employer changed and misrepresented plan terms to his detriment); *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 717–18 (6th Cir. 2005) (allowing both § 502(a)(1) and § 502(a)(3) claim where the plaintiffs alleged two separate injuries, one relating to individual denial-of-benefits and the other to plan-wide claims-handling procedures).

The district court awarded the total amount of relief sought under § 502(a)(1), and thus did not directly address whether—in the event Brown III only partially recovers the amount of coverage which was paid for (as we now conclude)—he would be entitled to equitable relief under § 502(a)(3). Regardless of the amount of recovery received from a § 502(a)(1) claim, a claimant cannot recover under both § 502(a)(1) and § 502(a)(3) for the same injury. *See Rochow*, 780 F.3d at 372-74. Thus, Brown may have another remedy if he has asserted an injury separate and distinct from the denial of benefits—such as an injury from United's acceptance and retention of premiums. If the district court finds a separate injury, an equitable remedy such as surcharge, reformation of the contract, or estoppel might be appropriate and could result in an award of $31,666.67—the difference between the $181,666.67 in coverage for which Brown II

paid and the $150,000 in benefits to which Brown III is entitled under § 502(a)(1). *See generally CIGNA Corp. v. Amara*, 563 U.S. 421, 440–42 (2011).

Indeed, Brown III cites two of our sister circuits that have explained the broad availability of equitable remedies where a plan fiduciary accepts premiums and then denies paid-for benefits pursuant to the terms of the plan—as United did here. The Fourth Circuit has explained, for example, that without equitable remedies being available under § 502(a)(3),

> fiduciaries would have every incentive to wrongfully accept premiums, even if they had no idea as to whether coverage existed—or even if they affirmatively knew that it did not. The biggest risk fiduciaries would face would be the return of their ill-gotten gains, and even this risk would only materialize in the (likely small) subset of circumstances where plan participants actually needed the benefits for which they had paid. Meanwhile, fiduciaries would enjoy essentially risk-free windfall profits from employees who paid premiums on non-existent benefits but who never filed a claim for those benefits.

*McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 183 (4th Cir. 2012); *see also Silva*, 762 F.3d at 718–20 (reversing dismissal of § 502(a)(3) claim that was based on the plan administrator breaching its fiduciary duty to provide the plaintiff with summary plan description describing evidence required as a prerequisite to insurability, which ultimately resulted in his denial of benefits and a corresponding § 502(a)(1) claim).

We accordingly reverse the district court's summary judgment to United on Brown III's § 502(a)(3) claim and remand for the district court to determine whether other equitable relief is appropriate.

### C.    Prejudgment Interest.

United argues that the district court erred in awarding prejudgment interest because it had previously dismissed all of Brown III's equitable claims. "[P]rejudgment interest may be awarded in the discretion of the district court. Awards of prejudgment interest are *compensatory*, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an

award." *Rochow*, 780 F.3d at 376 (citations omitted). Accordingly, an award of prejudgment interest may be appropriate under § 502(a)(1) without reliance on § 502(a)(3) for equitable relief. *See id.* We affirm the district court's award of prejudgment interest.

### D. Attorneys' Fees.

ERISA § 502(g)(1) grants a court discretion to "allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Factors a court must consider include,

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (citations omitted). "No single factor is determinative." *Wells v. U.S. Steel*, 76 F.3d 731, 736 (6th Cir. 1996).

On appeal, United challenges the propriety of awarding attorneys' fees but not the reduced amount awarded by the district court. The district court found that the first three factors weigh in favor of awarding attorneys' fees to Brown III, the fourth against it, and the last in favor of neither party. With regard to the first factor, the district court noted United's argument that denial of benefits itself does not necessarily amount to "bad faith," but the district court found that it did so here because United withheld benefits for over two years "despite affirming Brown II's coverage on its website and collecting premiums from Brown II's paychecks for ten months." United does not deny, under the second factor, its ability to pay an award of attorneys' fees. Turning to the third factor, the deterrent effect, the district court found that, although United may be right that the case involves "somewhat 'unique' circumstances" in a "micro sense," "employers routinely switch insurance providers, and the new provider's task of reviewing and approving employees' prior coverage cannot be that uncommon." "[A]n

imposition of attorneys' fees may encourage insurance providers to review their policies, communicate better with employers, proactively request necessary documentation from its insureds, and ensure the information it provides to its insureds is current and correct."

We conclude that the district court did not abuse its discretion in finding that the first three factors weighed in favor of awarding attorneys' fees and thus affirm its award.

## IV.    CONCLUSION

We **AFFIRM** the district court's grant of summary judgment to Brown III on the merits of his § 502(a)(1) claim as well as its awards of prejudgment interest and attorneys' fees. We **REVERSE** the district court's grant of summary judgment to United on Brown III's § 502(a)(3) claim and **REMAND** with instructions to determine the amount of Brown III's award under 502(a)(1) and to determine whether other equitable relief is appropriate.

COOK, Circuit Judge, dissenting. I find I am unable to join the majority opinion as it hinges a substantial award on the supposition that this decedent applied for $150,000 worth of life insurance, though there exists no record evidence of his application. Premium payments deducted by his employer leads the majority to surmise from there that the decedent surely applied. But that path of analysis misses the crucial issues raised by United concerning the gateway importance of its plan's contractual provisions regulating enrollment, eligibility and insurability. Appropriate focus on the plan documents' contractual limitations would have required the majority to accord "extreme deference," *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1067 (6th Cir. 2014), to United's reasonable reading of its plan's terms. And though the majority makes much of United being in the classic conflict situation—both construing the meaning of its plan terms while also deciding its duty to pay—courts view this situation as not affecting the deference due. *Conkright v. Frommert*, 559 U.S. 506, 512 (2010) (citing *Metro. Life Ins. v. Glenn*, 554 U.S. 105, 115–116 (2008)); *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998) (citing *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir. 1989)).

What is more, United thoroughly reviewed Brown's unique circumstances before it explained its rationale for why Brown never qualified as an insured of United under the plan's terms. Though Brown requested that Hartford issue a $30,000 policy to him, the fact of his employer changing carriers from Hartford to United before his requested coverage took effect disqualified him from "grandfathering" into automatic insurability as did his already-insured coworkers.

United's plan-based explanation of its reasonable reading of the plan's terms—within the broad discretion the plan itself grants—should have foreclosed labeling United's denial as

"arbitrary and capricious." And without that label, no basis existed for awarding prejudgment interest or attorney fees.

I would reverse the judgment of the district court, and remand for the limited purpose of entering judgment for Brown for in the amount of premium payments withheld, approximately $1000.