RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BRUCE COREY,

*Plaintiff-Appellant,*

*v.*

No. 16-3817

SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.;
EATON CORPORATION; EATON CORPORATION
DISABILITY PLAN FOR U.S. EMPLOYEES; EATON
HEALTH AND WELFARE ADMINISTRATIVE COMMITTEE,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:15-cv-01736—Patricia A. Gaughan, District Judge.

Argued: March 16, 2017

Decided and Filed: June 8, 2017

Before: BOGGS, ROGERS, and COOK, Circuit Judges.

---

## COUNSEL

**ARGUED:** Andrew L. Margolius, MARGOLIUS, MARGOLIUS AND ASSOCIATES, Cleveland, Ohio, for Appellant. Maynard A. Buck, BENESCH FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellees. **ON BRIEF:** Andrew L. Margolius, MARGOLIUS, MARGOLIUS AND ASSOCIATES, Cleveland, Ohio, for Appellant. Maynard A. Buck, Richard Hepp, BENESCH FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

COOK, Circuit Judge.   Plaintiff Bruce Corey worked as a machine operator in Eaton Corporation's Northern Ohio factory.   Corey has long suffered from cluster headaches— extremely painful attacks that strike several times per day for weeks on end.   In 2014, Corey applied for short-term disability benefits under Eaton's disability plan after a bout of headaches forced him to miss work.   After granting a period of disability, the third party administering Eaton's disability plan ("the Administrator") discontinued benefits because Corey failed to provide objective findings of disability.

Under the plan, "[o]bjective findings include . . . [m]edications and/or treatment plan." Corey's physicians treated his headaches by prescribing prednisone, injecting Imitrex (a headache medication), administering oxygen therapy, and performing an occipital nerve block. We must decide whether Corey's medication and treatment plan satisfy the plan's objective-findings requirement.   We hold that it does and therefore REVERSE the district court's contrary decision.

I.

*Plan Terms.*   Eaton's disability plan accords the Administrator discretion to interpret the plan's terms and determine benefits eligibility.   Under the plan's terms, an employee is eligible for short-term disability benefits if he has "a covered disability," which the plan defines as "an occupational or non-occupational illness or injury [that] prevents [the employee] from performing the essential duties of [the employee's] regular position with the Company or the duties of any suitable alternative position with the Company."

Relevant here, the plan also requires medical documentation of a disability:

Objective findings of a disability are necessary to substantiate the period of time your health care practitioner indicates you are unable to work because of your disability. Objective findings are those your health care practitioner observes through objective means, not your description of the symptoms. Objective findings include:

- Physical examination findings (functional impairments/capacity);
- Diagnostic test results/imaging studies;
- Diagnoses;
- X-ray results;
- Observation of anatomical, physiological or psychological abnormalities; and
- Medications and/or treatment plan.

*Treatment History.* In April 2014, cluster headaches forced Corey to leave work. A few days later Corey visited a neurologist, Dr. Rorick, who noted that the headaches occurred several times per day, typically lasted one to two hours, and were extremely painful. Dr. Rorick's notes reported that Corey took prednisone and injected Imitrex to treat the headaches, and explained that supplemental oxygen therapy "can help, but makes the headaches more frequent." Dr. Rorick further certified that Corey could return to work on May 7 with no restrictions.

Unfortunately, Corey's headaches persisted after May 7. Over the next few weeks, Corey visited Dr. Rorick three times. Each time, Dr. Rorick observed that Corey's headaches remained "very severe and incapacitating"; the headaches made Corey nauseated, dizzy, and occasionally rendered him unconscious. Dr. Rorick noted that Corey "is unable to drive to/from work [due to] pain when he has headaches," and that "[d]uring cluster headache exacerbation [periods] he needs to be off work." For treatment, he prescribed prednisone, lamotrigine (a prescription anticonvulsant), and Imitrex injections.

Corey also visited a headache specialist, Dr. Baron, who reported that Corey suffered from "chronic cluster headaches with frequent exacerbations which impair working ability," that the condition caused episodic flare-ups preventing Corey from working, and that it was medically necessary for Corey to miss work during the flare-ups. Somewhat inconsistently, Dr. Baron checked "no" in the box next to: "Is the employee unable to perform any of his/her job functions due to the condition[?]"

Finally, in July, Corey consulted a surgeon to consider occipital nerve stimulation. The surgeon's report detailed Corey's treatment history, including his use of supplemental oxygen, Imitrex injections, and prednisone. The report related that a recent occipital nerve block

temporarily relieved Corey's headaches. After discussing the risks, benefits, and alternatives, Corey decided to proceed with occipital nerve stimulation.

*Denial of Short-Term Benefits.* The Administrator initially approved Corey's short-term disability application. Because Dr. Rorick certified Corey as disabled only through May 7, however, the Administrator denied benefits after that date. Corey appealed that denial and supplemented his application with additional doctors' notes.

The Administrator referred Corey's application to an independent file reviewer, who determined that Corey was not disabled because cluster headaches do "not result in any neurological, physical exam abnormalities." The Administrator then denied his application due to a lack of "objective findings contained in the medical documentation."

When Corey appealed again, the Administrator sent his application to another independent file reviewer, who also found "no objective evidence" of disability. The Administrator then issued a final denial. After reciting the plan language, it concludes:

> The substantial weight, [sic] of the medical documentation provided by you, your treating health care providers and the independent physician reviewers, supports the conclusion that for the time period from May 7, 2014 to present your disability is not covered as required by the Plan.

The denial offers no other explanation or analysis.

## II.

The Employee Retirement Income Security Act grants a plan participant the right "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). When the plan vests the administrator with discretion to interpret the plan (as is undisputed in this case), the court reviews the benefits denial under the "arbitrary and capricious" standard. *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002) (citation omitted). The court must uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (citation omitted). The court reviews only

the evidence available to the administrator at the time it made the final decision. *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 547 (6th Cir. 2015) (citing *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014)).

III.

Corey contends that the Administrator failed to engage in a deliberate, principled reasoning process because it disregarded his medications and treatment plan. Corey's argument is straightforward: the plan lists medications and treatment plan as examples of "objective findings"; Corey furnished physician notes detailing his cluster-headache medication and treatment plan; yet the Administrator rejected his application due to a lack of objective findings. Neither the Administrator nor the independent examiners discussed whether Corey's medications and treatment plan substantiated the presence of cluster headaches (though the record is unclear whether the Administrator provided either independent examiner with the plan's "objective findings" definition).

The Administrator replies that it interpreted the plan's language to require either 1) that a medication's side effects cause the disability, or 2) that a medication or treatment plan "objectively confirm that the individual is unable to work." According to the Administrator, it is irrelevant that Corey's medication and treatment history verify the existence of cluster headaches.

We agree with Corey that his medication and treatment history satisfy the plan's objective-findings definition. Indeed, the plan is clear and unambiguous: "Objective findings include . . . [m]edications and/or treatment plan." The Administrator's additional requirement that the medication and treatment plan either cause the disability or confirm the applicant's inability to work finds no support in the plan's terms.

Furthermore, the plan's surrounding language confirms that the prescription of medication and a treatment plan may evidence an underlying disability. The five preceding examples—physical-examination findings; diagnostic test results/imaging studies; diagnoses; x-ray results; and observation of anatomical, physiological, or psychological abnormalities—are

used to verify a medical condition. None of the examples causes disability or objectively confirms the employee's inability to work.

An illustration from the Administrator's brief illustrates how its interpretation here does not fit with the plan's other examples:

> For example, a prescribed regimen of pain medication may serve to indicate the existence of a back condition. Standing alone, however, the prescription of such medication does not indicate that one is unable to work for a period of time because of that condition. Indeed, some individuals experiencing back pain are readily able to continue work.

But an x-ray showing nerve compression suffers from the same defect: it bespeaks the existence of a back condition, but doesn't demonstrate whether the condition prevents the employee from working. So too with every other example in the plan.

The Administrator's response leans heavily on the plan's grant of interpretive discretion. But the record leaves us guessing as to how the Administrator interpreted the plan's objective-findings definition. The Administrator's denial letters simply quote the plan language and then conclude Corey's evidence fails to suffice. Although the Administrator enjoys interpretive latitude, we defer only to its actual interpretations—it can't issue a conclusory denial and then rely on an attorney to craft a post-hoc explanation. *See Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 848 n.7 (6th Cir. 2000).

Furthermore, the Administrator relies on two cases, *Scott v. Eaton Corp. Long Term Disability Plan*, 454 F. App'x 154 (4th Cir. 2011) (per curiam), and *McGruder v. Eaton Corp. Short Term Disability Plan*, No. 3:06-418-CMC, 2006 WL 3042798 (D.S.C. Oct. 23, 2006), neither of which persuades us. In both cases, the employees argued that a pain medication's side effects prevented them from working. Both courts denied the applicants' claims due to inadequate evidence corroborating their respective medication's side effects. These cases have little pertinence here because Corey argues that he is disabled due to his cluster headaches, not his reaction to treatment.

In sum, the plan identifies "[m]edications and/or treatment plan" as examples of "objective findings." Corey's physicians supplied evidence detailing his cluster-headache

treatment. Yet the Administrator denied Corey's application due to a lack of objective findings. It never explained why his medications and treatment plan failed to satisfy the plan's objective-findings definition. Nor did its rejection letters offer any other explanation for the benefits denial. Accordingly, the Administrator's decision was arbitrary and capricious.

IV.

For these reasons, we VACATE the district court's judgment and REMAND to the district court with instructions to remand the case to the Administrator for a full and fair review consistent with this opinion.